[Crim. No. 29561. Second Dist., Div. One. Aug. 1, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
LILY COLEMAN et al., Defendants and Appellants.

## COUNSEL

Anne H. Sax and Constantin Urevich, under appointments by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Theodora Berger and Owen Lee Kwong, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—In the case at bench, defendant William Michael Dukes has appealed from a judgment of conviction of possession of heroin based upon his plea of guilty. Defendant Lily Coleman has appealed from a judgment of conviction of the same offense entered after a waiver of jury trial and submission of the matter upon the transcript of the preliminary hearing with supplementing testimony.

The Dukes appeal concerns primarily the issue of that defendant's right to withdraw his guilty plea in light of the plea's having been entered with the erroneous understanding that a certificate of probable cause issued by the trial court would preserve, as an issue on appeal, the propriety of a trial court order denying Dukes' motion for the disclosure of the identity of an informer. The Coleman appeal involves primarily the issue of the effect of the 1969 amendment adding subdivision (d) to Evidence Code section 1042. The appeal concerns the consequences of the amendment to the burden and quantum of proof necessary to establish that failure to disclose the identity of an informer will deny a defendant a fair trial.

Bound by the rule of *People* v. *DeVaughn* (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872] (see also *People* v. *Meals* (1975) 49 Cal.App.3d 702 [122 Cal.Rptr. 585] and *People* v. *Brown* (1971) 18 Cal.App.3d 1052 [96 Cal.Rptr. 476]), we conclude that the Dukes judgment must be reversed and the matter returned to the trial court so that Dukes may be permitted to withdraw his plea of guilty. Noting that the statutory purpose of Evidence Code section 1042, subdivision (d), is not served by a process which in court and *in camera* determines that a defendant will not be denied a fair trial by nondisclosure of an

informer's identity based upon a record consisting of: (1) testimony which discloses that the informer is a material witness to the issue of guilt; (2) hearsay evidence that the informer incriminated the defendant; and (3) opinion testimony to the effect that the informant's testimony will not aid the defense, we reverse the Coleman judgment.

## Dukes Appeal

After a preliminary hearing, Dukes was held for trial in the superior court upon the charge of possession of heroin for sale. His motions to suppress evidence and for disclosure of the identity of an informer having been denied, Dukes negotiated a plea bargain with the prosecution.

By the terms of the bargain, Dukes agreed to plead guilty to the included offense of simple possession of heroin. The prosecution agreed to that plea. With the acquiescence of the prosecutor, Dukes' counsel informed the court that the bargain included the preservation of Dukes' right "to appeal the denial of the request for the informant." The trial judge responded: "[t]he record can indicate the representations you are making. As far as the legal effect of it, that will be up to the Court of Appeal. An appeal from a guilty plea requires a certificate . . . . And if you file the appropriate document the Court will consider that certificate." Defense counsel answered: "Fine, Your Honor."

The trial court issued its certificate purporting to permit an appeal from the judgment, raising the issue of the propriety of the trial court action denying Dukes' motion for disclosure of the identity of the informer.

Where a defendant's plea is "induced by misrepresentations of a fundamental nature" such as a bargain which is beyond the power of the trial court, a judgment based upon the plea must be reversed. (*People* v. *DeVaughn, supra,* 18 Cal.3d 889, 896; see also *People* v. *Meals, supra,* 49 Cal.App.3d 702, 710; *People* v. *Brown, supra,* 18 Cal.App.3d 1052, 1055.)

Here the bargain was one beyond the power of the trial court. "Issues cognizable on an appeal following a guilty plea are limited to issues based on 'reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings' resulting in the plea. [Citations.] The issuance of a certificate of probable cause pursuant to [Penal Code] section 1237.5 does not operate to expand the grounds

upon which an appeal may be taken as that section relates only to the 'procedure in perfecting an appeal from a judgment based on a plea of guilty.' " (*People* v. *DeVaughn, supra,* 18 Cal.3d 889, 895-896.) ▮ "An order denying a motion to disclose the identity of an informant is not subject to review on appeal after the defendant has entered a plea of guilty." (*People* v. *Castro* (1974) 42 Cal.App.3d 960, 963 [117 Cal.Rptr. 295].)

Hence Dukes' plea of guilty was induced by a material mistake in which the trial court participated so that the judgment based upon the plea must be reversed and the matter remanded to the trial court with instructions to permit Dukes to withdraw the plea. Cases such as *People* v. *Castro, supra,* 42 Cal.App.3d 960, cited by the prosecution for a contrary result, are not apposite. In those decisions, the right to review on appeal of a pre-judgment order was not encompassed in the plea bargain.

Dukes contends, in addition, that a search which disclosed the contraband which he is charged with possessing was illegal. It is sufficient for our purpose here to note that the search is validated by probable cause to arrest Dukes in the apartment where the heroin was found, much of the contraband was in plain view when the door to the apartment was opened in response to the knock of the police, and the search was with consent.

*Coleman Appeal*

*Facts*: On September 16, 1975, Los Angeles Police Officer Gregory Hancock received information from an "untested informant" that the informant had witnessed known "drug users make a buy . . . at . . . Lily Coleman's residence, 1422 East 112th Street . . . ." One transaction involved a "dime bag" of heroin. The informant told Hancock that he saw on the kitchen table of the Coleman residence a sifter, heroin, lactose, measuring spoons, an Excedrin bottle containing balloons, and an automatic pistol. The informant said that Coleman had balloons inside her purse.

In Hancock's presence, the informant dialed a number subsequently established to be Coleman's. With the informant's permission, Hancock listened to the conversation. A woman answered the phone. The informant asked if the "stuff" was still there. The woman, whose voice Hancock later recognized as Coleman's, answered, "Yes, we still have

the stuff." The informant asked to speak to "Duke." Dukes, whose voice Hancock was later able to identify, picked up the phone and said to the informant, "I still have the dew here, come on over."[1]

Hancock, in the company of several other officers, went to Coleman's residence. Hancock went to the rear door. In response to his knock, the door was opened by Dukes. Through the doorway, Hancock saw on a kitchen table a brown bottle containing a powdery substance, a jar containing white powdery substances, measuring spoons, funnels, balloons, a sifter, an Excedrin bottle, and a lady's purse.

Addressing Coleman and Dukes, Hancock asked who paid the rent on the apartment. Coleman stated that she did. Hancock asked for permission to search. Coleman responded in the affirmative and added, "and everything else that you can find you can take." Both defendants were then arrested, it being Hancock's opinion that the items on the table established that defendants were in possession of heroin for purposes of sale.

Heroin was found in the purse which also contained Coleman's identification cards. Her defense was to the effect that Dukes had placed the heroin in the purse without Coleman's knowledge.

*Proceedings in the trial court*: At their preliminary hearing and again at trial, Coleman, along with Dukes, moved for disclosure of the identity of the informer. Hancock refused to reveal the informant's identity and claimed the privilege against disclosure provided in Evidence Code section 1041. In each instance, the court conducted an *in camera* hearing pursuant to subdivision (d) of Evidence Code section 1042.

Hancock was the only witness at the *in camera* hearings. The informant, having told Hancock that he would under no circumstances appear in court even if his appearance were secret and having been assured by Hancock no appearance would be required, was not called. Hancock's testimony paralleled that given by him in open court. He added detail of how he had come in contact with the informer and the length of the informer's acquaintanceship with Coleman and Dukes. He stated that the informer had said that Dukes kept his inventory of heroin at the apartment, and that Dukes "had more control over the situation" than Coleman. Hancock added his opinion that nothing the informant

---

[1] Both "stuff" and "dew" are street words for heroin.

"could say . . . could help either [Coleman or Dukes] as to this particular case." Hancock testified further that the informer's life would be in great danger if his identity were revealed. The identity of the informer was not disclosed *in camera.*

Based upon the information received in court and *in camera,* the magistrate conducting the preliminary hearing and the judge presiding over the trial both found "that there is no reasonable possibility that nondisclosure might deprive the defendants of a fair trial." Both the magistrate and the trial judge denied the motions to disclose the informer's identity.

*Statutory and decisional history in context of facts here present*: Evidence Code sections 1041 and 1042 were originally enacted in 1965. Section 1041 granted a public entity the privilege to refuse to disclose the identity of an informant furnishing information of a crime where "there is a necessity for preserving the confidentiality . . . that outweighs the necessity for disclosure in the interest of justice." In its original form, section 1042 required that the trier of fact "make [an] order . . . adverse to the public entity bringing the proceeding . . . upon any issue in the proceeding to which the privileged information is material" when the 1041 privilege was successfully asserted.

Section 1042 was liberally construed in favor of the defendant in a criminal proceeding. The prosecution was required either to disclose the informer's identity or incur a dismissal "[w]hen it appear[ed] from the evidence that an informer [was] a material witness on the issue of the defendant's guilt . . . ." (*People* v. *Hunt* (1971) 4 Cal.3d 231, 239 [93 Cal.Rptr. 197, 481 P.2d 205].) Otherwise, "nondisclosure would deprive [the defendant] of a fair trial." (*Price* v. *Superior Court* (1970) 1 Cal.3d 836, 842 [83 Cal.Rptr. 369, 463 P.2d 721].) The defendant's burden of establishing a case for disclosure was discharged when the " 'defendant demonstrate[d] a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration.' " (*Price* v. *Superior Court, supra,* 1 Cal.3d 836, 843.) The defendant was not required to "state factually what [the informer] will say if he is required to testify." (*Id.*)

Evidence Code section 1042 was amended in 1969. The section's original content was retained essentially intact but a new subdivision (d) was added. That subdivision provides for a hearing outside the presence of the jury when "a party demands disclosure of the identity of the

informant on the ground the informant is a material witness on the issue of guilt . . . ." It states that the prosecutor may demand an *in camera* hearing from which the defendant and his counsel are excluded and continues: "At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." The subdivision provides finally that "The court shall not order disclosure . . . nor dismiss the criminal proceeding, . . . unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial."

██  As the California law existed prior to the 1969 addition of subdivision (d) to Evidence Code section 1042, Coleman established a case for disclosure of the identity of the informer or dismissal if the identity were not disclosed. The informer was a material witness to the possession of heroin. He had been present in the Coleman-Dukes apartment only a few hours before the contraband was found by the police. He knew of the relationship of Coleman and Dukes and that Dukes was the dominant party in it. While the court was cognizant that the informer had told Hancock that Coleman was a participant in Dukes' heroin business, the court remained uninformed of the extent to which the informant would testify consistently with his hearsay declaration when placed under oath. The court remained similarly uninformed on the extent to which the informer's knowledge of the detail of the Dukes-Coleman relationship might corroborate Coleman's defense that Dukes had placed the heroin in her purse without Coleman's knowledge. In those circumstances and leaving the effect of subdivision (d) aside, Evidence Code section 1042 requires disclosure of the informer's identity or dismissal of the proceedings. (*People* v. *Perez* (1965) 62 Cal.2d 769, 773-774 [44 Cal.Rptr. 326, 401 P.2d 934]—informer who was a percipient witness to defendants' possession "might" have confirmed the defendants' testimony that they did not know that bags in their possession contained marijuana; *People* v. *Williams* (1958) 51 Cal.2d 355, 359-360 [333 P.2d 19]—informer who witnessed sale of narcotics by the defendant to an undercover officer might have contradicted the officer's testimony that the defendant was the seller.)

██  There remains the issue of the effect of the 1969 amendment to Evidence Code section 1042 upon the case at bench. The addition of

subdivision (d) to section 1042 provides a method by which, despite a defendant's prima facie case for disclosure, the court can, by an *in camera* hearing, determine whether in fact the nondisclosure of the informant will deprive the defendant of a fair trial. (*People* v. *Pacheco* (1972) 27 Cal.App.3d 70, 80 [103 Cal.Rptr. 583].)

Subdivision (d) is susceptible of two constructions. One is that the subdivision retains the pre-1969 material witness—potential aid to the defense test for disclosure but contemplates that evidence may be produced, with the protection of secrecy, which will, by elimination of speculation otherwise inherent in the process, aid the court in determining whether the testimony of the informer may aid the defense. (*People* v. *Pacheco, supra,* 27 Cal.App.3d 70, 80.) The other is that subdivision (d) changes the pre-1969 test and permits the court to deny disclosure despite a showing that the informer is a material witness and a lack of specific evidence of the informer's reasonably anticipated testimony.

We conclude that the first construction is required, both by the purpose of the amendment and its language.

■ "Since the crucial question as to disclosure is whether the informant could give testimony on the issue of guilt which would exonerate the defendant, the procedure contained in [subdivision (d) of section 1042] is highly advantageous and provides a method of eliminating the 'guessing game' qualities which have often attended these determinations. [Citation.] It allows the prosecutor to produce the informant *in camera* so that the court can determine just what the informant knows, and whether this testimony would be material on the issue of guilt. If his testimony at the *in camera* hearing shows that there is no reasonable possibility the informant could aid the defense, the public interest in nondisclosure of his identity can be preserved without any infringement on the defendant's right to a fair trial. [Citations.]" (*People* v. *Aguilera* (1976) 61 Cal.App.3d 863, 868-869 [131 Cal.Rptr. 603]; see Brenner, *In Camera Hearings on Informant Disclosure,* 15 Santa Clara Law. 326; Note, *Non-Disclosure of the Informant's Identity,* 1 Pacific L.J. 610.)

Where the proceedings *in camera* combined with those in open court do not eliminate "the guessing game qualities," the purpose of subdivision (d) of Evidence Code section 1042 is not served.

■ Subdivision (d), as added to Evidence Code section 1042, preserves the pre-1969 case law test of "reasonable possibility that nondisclosure might deprive the defendant of a fair trial." It mandates that the test be applied to the combination of evidence produced in court and *in camera.* Those factors disclose a legislative intent to preserve the pre-amendment test for nondisclosure while providing an expanded evidentiary base for the court's determination.

■ *Evidence on the hearing in court and in camera:* Here the evidence produced at the hearing to compel the disclosure of the identity of the informer and at the proceeding *in camera* establishes that the informer is a percipient witness on the issue of Coleman's guilt or innocence, but does not begin to eliminate the guesswork involved in speculating what the informer's testimony would be if he were called to testify.

The only evidence presented as to the expected testimony of the informer is the bald opinion of Officer Hancock that the informer could not say anything that would aid the defense. The opinion is unsupported by factual recitation of its basis. The unsupported opinion is not competent to prove anything.

*Knowledge of informer's identity:* The prosecution seeks to salvage the situation by arguing that the record supports the inference that Coleman already knew of the informer's identity because of the telephone call so that disclosure of identity was not required. Leaving aside the proposition that the basis of the Evidence Code section 1041 privilege would not then be present for lack of a showing of any public interest in nondisclosure, the argument suffers from dependence upon guesswork. It assumes that the informer, if called to testify, would confirm and not rebut Hancock's testimony that Coleman was the female party to the telephone conversation.

*Conclusion:* We thus conclude that Coleman has demonstrated a " ' "reasonable possibility that the anonymous informant . . . could give evidence on the issue of guilt which might result in [her] exoneration," ' " as that terminology is used in the controlling precedent of *Price* v. *Superior Court, supra,* 1 Cal.3d 836, 843. We conclude further that the evidence produced in court and *in camera* does not dispel the proposition that denial of disclosure will deprive Coleman of a fair trial. Hence, the trial court erred in denying Coleman's motion for disclosure of the identity of the informant. It was required to grant the motion on the

showing made and to dismiss the proceedings if the prosecution persisted in its claim of privilege.

We note, as to Coleman's other contentions, that the search which disclosed the heroin was legal and that substantial evidence supports the judgment.

*Disposition*

The Dukes judgment is reversed with instructions to the trial court to permit Dukes to withdraw his plea of guilty and to proceed to trial on the original charges against him if the plea is withdrawn. The Coleman judgment is reversed.

Lillie, Acting P. J., concurred.

**HANSON, J.**—I respectfully dissent.

Defendants William Michael Dukes and Lily Coleman were charged by way of information with possession of heroin for purposes of sale in violation of Health and Safety Code section 11351 (hereinafter section 11351). By way of an amendment to the information defendant Dukes was also charged with three prior felony convictions in 1967, 1972 and 1974.

Defendant Dukes pleaded guilty to the lesser offense of possession of heroin in violation of Health and Safety Code section 11350 (hereinafter section 11350) prior to trial pursuant to a plea bargain and proceedings were suspended. At time of sentencing, he was granted probation for a five-year period on condition, amongst others, that he spend the first 270 days in the county jail.[1]

Defendant Lily Coleman proceeded to trial. She waived a jury and stipulated that her case could be decided by the court based on the testimony contained in the reporter's transcript of (1) the preliminary hearing in the municipal court conducted on October 1, 1975, in which

---

[1] I have ordered up and reviewed the complete superior court file pursuant to rule 12(a), California Rules of Court. The file shows that on June 1, 1977, defendant Dukes appeared for a violation of probation hearing on the instant case (No. A320677) and two other cases (Nos. A185339 and A609353). His probation was revoked on all three cases. He was sentenced to state prison on case No. A320677, the sentence to run concurrently with the sentence in case No. 609353 and consecutively to the sentence in case No. A185339.

an *in camera* hearing on the issue of disclosure of the informant was conducted; (2) the Penal Code section 995 (hereinafter section 995) motion commenced on December 31, 1975, in the superior court in which the court again considered the motion to disclose the name of the informant and held another *in camera* hearing; (3) the Penal Code section 1538.5 (hereafter section 1538.5) motion to suppress the evidence conducted on June 11, 1976; plus (4) additional testimony offered at the trial.

Since Evidence Code section 1042, subdivision (d), (hereinafter section 1042(d)) mandates that the court shall not order disclosure nor dismiss the criminal proceeding unless, based upon the *in court and in camera* evidence, it concludes there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial, a résumé of the evidence contained in the reporter's transcript of all four of the above enumerated hearings is necessary.

## The Facts

### (1) *The Preliminary Hearing*

At the preliminary hearing in municipal court before Judge Sidney A. Cherniss, which was conducted in open court with both defendants Dukes and Coleman present, Police Officer Gregory L. Hancock testified that during the evening hours of September 16, 1975, he received information from an untested informant that he (the informant) saw drug users buy a dime bag ($10 bag) of heroin at Lily Coleman's residence, 1422 East 112th Street, and Dukes was inside the house selling heroin to an individual; that he (the informant) saw a sifter, some heroin, some lactose and measuring spoons on the kitchen table and he also saw an Excedrin bottle containing balloons and there were balloons inside the kitchen drawers. The informant said he also saw balloons inside defendant Coleman's purse and there was also an automatic pistol in the residence.

Officer Hancock further testified that the informant made a phone call to number 564-9568 and gave him permission to listen in; that the informant asked the female who answered the phone if everything was cool and if the stuff was still there; that the female answered, "Yes, we still have the stuff"; that the informant then asked if he could speak to "Duke", that Dukes came to the phone, and the informant asked Dukes if everything was still cool and Dukes stated, "I still have the dew here,

come on over." Officer Hancock testified that the words "stuff" and "dew" are narcotic slang for heroin; that he (Officer Hancock) talked to defendants Dukes and Coleman later that same night and their voices were the same as the male and female he overheard talking to the informant on the telephone earlier that night.

Officer Hancock testified that he and Officers Wheelis, Doyle and Rood and a couple of Los Angeles Housing Authority officers then went to 1422 East 112th Street on a narcotics investigation; that he and Officer Wheelis went to the rear door and defendant Dukes opened the door; that defendant Dukes was advised by Officer Wheelis that they had received information that there had been dealings in narcotics that day; that at that time the officers from the doorway observed the kitchen table which had narcotic paraphernalia on top of it consisting of a brown bottle containing powdery substance, a jar containing white powdery substances, measuring spoons, three funnels, a sifter, a couple of balloons, an Excedrin bottle and a lady's purse; that he (Officer Hancock) asked defendant Lily Coleman who paid the rent at the location and that she stated that she lived there and paid the rent; that he (Officer Hancock) then asked defendant Coleman for permission to search her residence and she stated, "Yes, and everything else that you can find you can take"; that both defendants were then detained due to the narcotic paraphernalia on the kitchen table and that the search of the premises thereafter uncovered more evidence including a .22 caliber automatic pistol and shells;[2] that the balloon found on the kitchen table was in plain view and an orange balloon was recovered from inside the purse[3] which was on the kitchen table; that it was his (Officer Hancock's) opinion "that the substances which [he] observed on the kitchen table were all being used to process what is called heroin, used for dealing and selling . . . based on the fact that they had all the materials there to sort out the heroin, mix it with the white powdery substance which would dilute it. They had funnels, the balloons to package the brown substance and at which time they could later sell, and, also, the fact that on one balloon it was a 10 marked on it and another balloon there was a 20 marked on it, which indicated to [him] that they were going to be sold for twenty dollars and ten dollars."

---

[2] A third person, presumably Ronell Smith, was arrested at the time but not in the Coleman residence. He was across the walkway in a different apartment. (See the testimony produced at the section 1538.5 hearing, *infra.*)

[3] Officer Hancock testified on cross-examination that the purse on the kitchen table in which the balloon was found contained papers with Lily Coleman's name on them.

On cross-examination by defendant Dukes' counsel, Officer Hancock stated he decided to go over to the defendant's residence on a narcotics investigation because when defendant Dukes told the informant on the telephone to "come on over and get it now" the informant told Dukes that he would; that defendant Dukes opened the kitchen door wide open (nine-tenths of the way) and defendant Coleman was standing approximately two feet back of him; and that both defendants were known as narcotics users or sellers.

When counsel for defendant Dukes asked Officer Hancock for the name of the informant, the officer refused to disclose the name and cited section 1041 of the Evidence Code.

On cross-examination by defendant Coleman's counsel, Officer Hancock testified that the informant was not known as a user of narcotics, was not under arrest, had no charges pending and that the informant was not paid for the information. Officer Hancock stated that he had the name and present address of the informant. Thereafter defendant Coleman's counsel requested the name of the informant and Officer Hancock again refused.

Following argument by counsel, the court initially voiced the belief that the name of the informant should be disclosed, whereupon the prosecution requested an *in camera* hearing pursuant to section 1042(d). The court granted the request and an *in camera* hearing was conducted in chambers with Officer Hancock, the district attorney, the court reporter and the clerk present. Following the hearing the judge stated in open court: "The record will reflect that the in camera was heard concerning the revelation of the identity of the informant in this case and the Court finds that there is no possibility that the testimony of the informant would be of assistance to the defendants on the issue of guilt or innocence and, therefore, I will not require the officer to disclose the identity of the informant. [¶] The Court finds that there is no reasonable possibility that non-disclosure would deprive the defendants of a fair trial, either defendant. . . ."

(2) *The Section 995 Motion*

The reporter's transcript of the hearing reflects that the section 995 motion was conducted before Judge Edward A. Hinz, Jr., in the superior court and was submitted on the transcript of the preliminary hearing and after extensive argument over disclosure of the identity of the informant,

another *in camera* proceeding was held pursuant to section 1042(d). Following the hearing, Judge Hinz in open court stated: "The Court has held that hearing; and based upon the testimony taken at the hearing the Court finds that there is no reasonable possibility that nondisclosure might deprive the defendants, or either of them, of a fair trial. [¶] Such being the case, the Court orders that there is no reason to disclose the name of the informant. [¶] The Court previously received and ordered transcribed the in-camera hearing conducted at the time of the preliminary hearing. The Court orders that that transcript be sealed and remain sealed, to be opened only upon Court order. [¶] Similarly, with the proceedings [*sic*] of the proceedings in the in-camera hearing held today, that shall be, if prepared, ordered sealed and not disclosed except to a Court of competent jurisdiction and on a Court order."

On a later date the court reconvened on defendant Dukes' motion to reopen the motion for disclosure of the informant and the court again denied the motion, basing its denial on jurisdictional grounds, on the merits, and on the testimony at the *in camera* hearing.

### (3) *The Section 1538.5 Motion*

The section 1538.5 motion was submitted on the transcript of the section 995 motion plus additional testimony.

On cross-examination, Officer Hancock stated he talked with the informant in the police station at about 11 p.m. and the informant stated he was present that same day at defendant Coleman's residence when a male Negro purchased a dime bag from defendant Dukes in the presence of defendant Coleman; that a search warrant was not obtained due to the time factor; and that he didn't recall the informant saying he saw any other persons at the sale except the two defendants and the individual who made the buy.

Officer Edward Wheelis testified as they approached the back door one person who was not involved yelled, "Duke, the police are coming"; that when defendant Dukes opened the back door he (Officer Wheelis) said: "We are police officers; we are here to conduct a narcotics investigation"; that he could see narcotic paraphernalia on the kitchen table; and that later there was a scuffle with defendant Coleman independent of the investigation and search.

Witness Ronell Smith, a neighbor, testified that he saw the police in the area, went into his apartment, and the police knocked and told him to step outside; that he didn't recall the officer's breaking down defendant Coleman's door and didn't recall anything unusual happening to the door.

Witness Gwendolyn Smith testified that some officers took her "old man" (presumably witness Ronell Smith) over to "Lily's back door"; that the next morning she noticed Lily Coleman's back door was "splintered."

Witness Ella Coleman, mother of defendant Lily Coleman, testified that she lived in the housing project near her daughter's apartment; that at about 2 o'clock in the morning she heard sounds coming from her daughter's apartment so she went over to investigate; that when she knocked a police officer opened the door and told her an investigation was going on and to leave; that she could hear her daughter (defendant Coleman) crying inside. She testified that she noticed the chain lock on the back door was hanging with the screws pulled out and it was not that way earlier in the evening when she was there. Witness Ella Coleman also testified that someone standing outside the door if it was opened could see the kitchen table.

Defendant Lily Coleman testified that at about 2 o'clock in the morning when she was on her way downstairs she heard sounds like someone entering the back door without a key; that she saw Ronell Smith's face at the door and started back upstairs and fell; that she looked back and saw police officers at her door; that she asked the officers if they had a search warrant several times and they said they didn't need one; that a "hassle" occurred. She denied dealing in narcotics; denied being present in her apartment earlier that day when defendant Dukes sold heroin to a drug addict; denied giving the police permission to search her purse which was also used by her mother, two sisters and a niece; denied knowing there was heroin in her purse; denied ever seeing a funnel with a balloon on it in her life; and denied ever seeing heroin packaged in a balloon. She admitted she had used heroin but denied she had used on the previous date.

Defendant Coleman further testified that she lived in the apartment alone with her five-year-old son, denied defendant Dukes lived there and testified that he (Dukes) had arrived only about 20 to 30 minutes before the police arrived and that he was not carrying anything in his hands.

## (4) *The Trial*

At the superior court trial after waiving the jury and stipulating that the court consider the testimony contained in the reporter's transcript of the preliminary hearing, the section 995 motion and the section 1538.5 motion, Lily Coleman admitted that she lied to the court during the section 1538.5 hearing when she testified that defendant "Dukes arrived 20 minutes before the police came in"; that actually defendant Dukes was living with her and she was afraid of him; that after she was arraigned in the instant case her defense counsel urged her to go to a drug rehabilitation program and she joined the "Bridge Back Drug Program" but because of threatening telephone calls and written communication from Dukes while he was in custody she left the program. She denied taking advantage of any money defendant Dukes was getting from the sale of narcotics and stated she paid her bills from money she got from the county.

Defendant Coleman denied that she knew the balloon of heroin was in her purse. She testified that defendant Dukes placed the balloon of heroin in her purse while she was unconscious because he told her he did.[4]

---

[4]Defendant Coleman's testimony in respect to how the balloon of heroin got in her purse is as follows:

"Q. Did you know anything about the balloon that was found inside your purse?

"A. On the way to jail Dukes rode with me, and he said while I was unconscious he dropped it in there.

"And if the police remembered hearing that, they'd tell the truth."

During cross-examination, defendant Coleman testified as follows:

"Q. And you had no idea that that balloon of heroin was in your purse, is that correct?

"A. No, I didn't.

"Q. And right now you're accusing the police officer, sitting right here in this court, of lying about finding it in there?

"MR. MASON [deputy public defender]: I believe that's a misstatement. She said that if the police officers heard—

"THE COURT: The objection is sustained.

"You may rephrase the question.

"Q. BY MR. VEZZANI [deputy district attorney]: Well, Miss Coleman, just exactly what are you accusing this Officer Hancock here of lying about?

"A. I didn't say he was lying.

"Q. Well, maybe I better go back; I'm not sure I understood.

"You said that if the police officer did what? What's he supposed to say?

"A. If they could remember they'd tell the truth about what was said when me and Dukes was in the back seat, when they was [sic] taking me to jail.

"Q. And it's your contention now that they should have heard something about Dukes saying that he put the balloon of heroin in your purse?

"A. I heard him; he said itloud [sic] enough.

"Q. Do you have any facts that you can tell this court at this time why Mr. Dukes

On cross-examination she admitted visiting defendant Dukes several times while she was out on bail and he was in custody.

On rebuttal Officer Gregory Hancock testified that defendant Dukes was under constant surveillance after the officers entered the kitchen and at no time did Dukes plant anything in defendant Coleman's purse.

After both sides had rested their cases, the trial court found defendant Lily Coleman guilty of the lesser offense of possession of heroin in violation of section 11350, suspended proceedings, and placed her on probation for a four year period on condition, amongst other things, that she re-enter the live-in "Bridge Back Drug Program" and not leave without permission of those operating the program.

---

would intentionally try and frame you?

"A. No. All I could say he dropped it in there after I was unconscious, when the police was [sic] arresting me.

"Q. Well, let's go back for a second, Miss Coleman.

"At what point during this entire affair did you become unconscious?

"A. It was about—it was after all the police had came [sic] from the backdoor.

"Q. Yes. And then what?

"A. They was [sic] asking questions.

"Q. Yes. And then they had found evidence there on the table; right?

"A. Yes.

"Q. They saw all that on the table, and they had placed everybody under arrest; right?

"A. I don't remember that.

"Q. Well, I'm trying to get an idea of when it was that you became unconscious during this whole affair when the police were inside your apartment.

"A. It was somewhere—the man, Ronell Smith, they had brought him in with them, and I remember they kept asking who was he.

"Q. Right. And they had already placed Dukes under arrest, hadn't they?

"A. I'm not sure.

"Q. They had already placed you under arrest, hadn't they?

"A. No.

"Q. As a matter of fact, they had already had your purse after Dukes was placed under arrest; isn't that true?

"A. I don't know.

"Q. Can you figure out, Miss Coleman, and tell us how it was that if Dukes and you were both under arrest at that time, that Mr. Dukes would have been able to sneak a balloon of heroin into your purse?

"A. What? Could you repeat it?

"Q. Yes, I will repeat it.

"Can you figure out any way to tell this Court how it was that if Dukes was arrested and you were arrested and they had already found all the heroin, he found a way to slip that heroin into your purse?

"A. We was all right by the table. My purse was right by the table."

## ISSUES

On appeal both defendants contend (1) that the trial court improperly denied their motions for disclosure of the name of the informant; and (2) that defendants' motion to suppress the evidence pursuant to section 1538.5 was improperly denied because there was no probable cause to search.

Defendant Dukes additionally contends that he had a right to withdraw his plea of guilty because of improper conduct by the court.

Defendant Coleman additionally contends the evidence was insufficient to support the judgment of conviction.

## DISCUSSION

### I

### THE DUKES APPEAL

The majority reverses the Dukes conviction on the ground that Dukes' plea of guilty was induced by a material mistake in which the trial court participated, citing *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Meals* (1975) 49 Cal.App.3d 702, 708 [122 Cal.Rptr. 585]; and *People* v. *Brown* (1971) 18 Cal.App.3d 1052, 1055 [96 Cal.Rptr. 476].

The *DeVaughn, Meals* and *Brown* cases are clearly distinguishable from the case at bench.

In *DeVaughn* the Supreme Court reversed the judgments based on a guilty plea because "it was beyond the power of the trial court to bargain with defendants to preserve for appellate purposes the issues of involuntariness, [and] they were improperly induced to enter such pleas." (18 Cal.3d at p. 896.)

In *Meals* the appellate court held "that it is inappropriate for the trial court to accept a plea based on a plea bargain which contains a promise that defendant will be entitled to or shall receive a certificate of probable cause (presumably made in order that defendant may pursue an appeal under section 1237.5)." (49 Cal.App.3d at p. 708.)

In *Brown* "defense counsel advised the court that defendant wished to withdraw his plea of not guilty and to enter a plea of guilty on the condition the court issue a certificate of probable cause 'so that Mr. Brown may appeal the denial of the motion under section 995 of the Penal Code.' " (18 Cal.App.3d at p. 1054.) The reviewing court reversed the judgment noting "the defendant was not advised of the nature of the appeal right he was to receive, that is, the consideration in return for his plea of guilty." (18 Cal.App.3d at p. 1055.) The court stated "his plea was motivated by a different consideration from that of a lesser punishment or pleading to a lesser included offense in return for his plea of guilty. Defendant gave up his right to a general appeal after trial. He pleaded guilty in consideration of the right to a limited appeal, but the record is devoid of any indication that defendant knew or understood the distinction between a general or unrestricted right to appeal from a judgment after trial, and an appeal limited by a certificate of probable cause after a plea of guilty." (18 Cal.App.3d at p. 1055.)

In the case at bench, as I read the reporter's transcript *in context* (set out in toto below),[5] I conclude the following:

---

[5]The reporter's transcript of August 3, 1976, contains the following colloquy:

"THE COURT: This is People versus William Michael Dukes, A320677.

"Will counsel state their appearances, please.

"MR. JAFFEE [defense attorney]: J. Jaffee for William Michael Dukes.

"MR. VEZZANI [deputy district attorney]: Mark Vezzani for the People.

"THE COURT: All right. I understand there is going to be a plea of guilty in this case. Is that correct?

"MR. JAFFEE: Yes, Your Honor. I believe it's to Count II, 11350 of the Health and Safety Code, on an amendment filed—

"MR. VEZZANI: I believe it will be a lesser but necessarily included offense in Count I.

"MR. JAFFEE: Fine.

"THE COURT: Is that what you want to do, Mr. Dukes?

"THE DEFENDANT: Yes.

"THE COURT: All right, Mr. Vezzani.

"EXAMINATION BY MR. VEZZANI:

"Q. William Michael Dukes, your attorney indicates you want to plead guilty to straight possession of heroin.

"Is that what you want to do, sir?

"A. Yes.

"Q. Mr. Dukes, you have a right to a trial by jury.

"That means you have a right to have 12 people come into the courtroom, listen to the evidence and decide whether or not you are guilty or innocent.

"Do you understand that, sir?

"A. Yes.

"Q. Do you waive and give up your right to a trial by jury?

"A. Yes.

"MR. VEZZANI: Counsel joins?

"MR. JAFFEE: Counsel joins.

"MR. VEZZANI: The People join.

(1) That defendant Dukes' total bargain, unlike that in *Brown,* was that by pleading guilty to the lesser offense of possession of heroin

"Q. Mr. Dukes, you have a right to confront the witnesses against you.

"That means you have a right to have the witnesses brought here into this courtroom, have them placed in the witness stand, hear them testify and hear your attorney cross-examine them.

"Do you understand that, sir?

"A. Yes.

"Q. Do you waive and give up your right to confront those witnesses?

"A. Yes.

"Q. You have an absolute right against self-incrimination.

"That means nobody can make you say anything which might tend to incriminate you.

"Do you understand that, sir?

"A. Yes.

"Q. Do you waive—strike that.

"If you plead guilty to this charge you will in fact be incriminating yourself.

"Do you understand that?

"A. Yes.

"Q. Do you waive and give up your right against self-incrimination?

"A. Yes.

"Q. Are you pleading guilty to this charge freely and voluntarily because in truth and fact you are guilty, and for no other reason?

"A. Yes.

"Q. Have any threats been made to you or anyone near and dear to you in order to get you to plead guilty?

"(Off the record discussion between defendant and his counsel.)

"A. No.

"Q. *All right. There has been a conference between your counsel, myself and the Court at which it was understood that if you were to plead guilty to this charge you would not be sentenced to state prison at this time.*

"*The likelihood is you would be placed on some sort of felony probation, and you may serve up to one year in the county jail as a condition of that probation.*

"*Do you understand that, sir?*

"A. *Yes.*

"Q. *Other than what I have just told you, have any other promises of any kind been made to you in order to get you to plead guilty?*

"A. *No.*

"Q. If you violate the terms and conditions of that probation you might have that probation revoked and you might be brought back into this court or another department of the Superior Court and sentenced to state prison for the term prescribed by law, which for a violation of Health and Safety Code Section 11350 is between 2 years and 10 years in the state prison.

"Do you understand that, sir?

"A. Yes.

"Q. Is it still your intention to plead guilty?

"A. Yes.

"Q. Very well, then. To Information A320677, the lesser but necessarily included offense therein of Health and Safety Code Section 11350, straight possession of heroin, how do you plead?

"A. Guilty.

"MR. VEZZANI: Thank you, sir.

"THE COURT: Counsel joins in the waivers and concurs in the plea?

(section 11350), he would not be sentenced to state prison, but could be placed on probation and would serve no more than one year in the county jail.

(2) That defendant Dukes' plea was *not* induced by a material mistake *in which the court participated* as in *DeVaughn* and *Meals.*

"MR. JAFFEE: Yes, Your Honor.

"THE COURT: All right. The Court finds that the waivers and plea are freely and voluntarily made, knowingly and intelligently made, that the defendant is aware of the consequences of the plea—

"Will counsel stipulate there is a factual basis for the plea?

"MR. JAFFEE: Yes, Your Honor, so stipulated.

"THE COURT: All right. The Court finds there is a factual basis for the plea.

"Mr. Dukes, you understand the Court will get a probation officer's report; and if the Court, after the Court has that report and reads it, feels the disposition stated in court here today is not appropriate the Court has the right to withdraw its approval.

"If that should happen you have a right to re-enter your plea of not guilty.

"Do you understand that?

"THE DEFENDANT: Yes.

"MR. JAFFEE: *Your Honor, I would also like the record to reflect that pursuant to the plea bargain, and made a part of the record, pursuant to the plea bargain Mr. Dukes would reserve his right to appeal the denial of the request for the informant and also the 1538.5 motion.*

"*The reason I request that of the Court is I don't want the plea of guilty to the 11350 Health and Safety Code to render moot the informant question, which I think it would.*

"*So I think he has to reserve that right on the record.*

"*And may that be part of the plea bargain?*

"MR. VEZZANI: That's okay with the People, except there's already been a 1538.5 and it's been denied.

"MR. JAFFEE: I understand that. But I think it has to be on the record as part of the plea bargain that he reserves the right to appeal the denial of the motion. Otherwise, it renders that—

"THE COURT: *Well, the record can indicate the representations you are making.*

"*As far as the legal effect of it, that will be up to the court of appeal.*

"*An appeal from a guilty plea requires a certificate.*

"MR. JAFFEE: I see.

"THE COURT: *And if you file the appropriate document the Court will consider that certificate.*

"MR. JAFFEE: *Fine, Your Honor.*

"THE COURT: All right. This matter should be set for probation and sentencing.

"Would September 14th be convenient?

"MR. JAFFEE: Your Honor, could we possibly have the 17th, that Friday?

"THE COURT: Yes, all right.

"Mr. Dukes, do you agree this matter may go over for sentencing to September 17th, 1976?

"THE DEFENDANT: Yes.

"THE COURT: All right. Probation and sentencing in this matter is set for September 17, 1976 at 9:00 a.m. in this court.

"The defendant and counsel are ordered to be present at that time.

"MR. JAFFEE: Thank you.

"THE COURT: All right."

Here, the record is clear that not until *after* (1) the defendant waived the panoply of constitutional rights, (2) stated on the record that there were no "other promises of any kind made to [him] . . . to get [him] to plead guilty" other than he "would not be sentenced to state prison at [that] time," would likely "be placed on some sort of felony probation," and "may serve up to one year in the county jail as a condition of that probation," and (3) entered his plea of guilty did defense counsel "request" the court that a reservation of right to appeal be made part of the plea bargain. Although the deputy district attorney agreed, the court said: "*Well, the record can indicate the representations you are making.* [¶] *As far as the legal effect of it, that will be up to the court of appeal.* [¶] *An appeal from a guilty plea requires a certificate.* [¶] . . . [¶] *And if you file the appropriate document the Court will consider that certificate.*" Thereafter defense counsel said that arrangement would be "fine" with him.

The above language shows there was no mistake and all parties were fully aware of the contents of the plea bargain. The trial court *did not* induce or bargain with defendant, nor participate in a bargain with him, to preserve for appellate purpose an issue which was beyond the power of the trial court to produce as in *DeVaughn.* Here, the court specifically said: "[T]hat will be up to the court of appeal." Moreover, the court merely said it would only "consider" the certificate of probable cause, which was not part of the bargain, as in *Meals* and *Brown.* Defense counsel acquiesced and at no time did defendant Dukes personally voice any objection to the proceedings.

Concluding that defendant Dukes' other claims of error are without merit I would affirm defendant Dukes' judgment of conviction.

## II

### The Coleman Appeal

In the case at bench Officer Hancock refused to disclose the identity of the informant under section 1041 of the Evidence Code. Municipal court Judge Cherniss during the preliminary hearing and superior court Judge Hinz during the section 995 motion each conducted separate *in camera* hearings as mandated by section 1042(d) at the request of the prosecuting attorney. Both judges considered the evidence presented at the hearing held *in court* and the evidence presented *in camera* and concluded there was no reasonable possibility that nondisclosure might deprive defendant Lily Coleman of a fair trial.

Having read and considered the reporter's transcript of all *in court* proceedings and the two *in camera* proceedings, I conclude that the courts below properly conformed to the procedural requirements of section 1042(d) and correctly held there was no reasonable possibility that failure to disclose the name of the informant would deprive the defendants, or either of them, of a fair trial. My reasons are as follows:

FIRST: Here, Officer Hancock testified in open court during the preliminary hearing, in the presence of the defendants and their counsel, of the telephone conversation he overheard between the informant and defendants shortly before the officers went to defendant Coleman's apartment on the narcotics investigation. He identified the voices of defendants Dukes and Coleman as the voices of the male and female on the telephone and at no time did either defendant deny that such a telephone conversation took place or the contents thereof. The defendants from the *in court* testimony of Officer Hancock certainly had sufficient information to pinpoint the identity of the informer by reason of tying together the time when the telephone conversation with the informant took place, the voice and the content of that conversation.

Thus, the *in court* testimony of Officer Hancock in the presence of defendants and counsel in fact disclosed the identity of the informant to defendants without actually stating his name. To reverse and dismiss the case as to either defendant for Officer Hancock's refusal to state the informant's name would exalt form over substance to an absurdity. The defendants were not deprived of a fair trial since they must have known the identity of the informant and had the power to subpoena the informant as a witness if they so desired.

When the disclosure issue was first raised during the preliminary hearing and the prosecution requested an *in camera* hearing, Judge Cherniss stated: "Well, it is a silly rule under these particular facts or circumstances and, also, the exercising of the privilege does not accomplish anything under these circumstances because the defendants surely know who they sold to that day and who made the telephone call within a short period of time of the arrival of the officers, so everyone is playing legalese games in this case. . . . [¶] For what purpose? It is really ridiculous, to be very blunt. I have already expressed the reasons. The informant made a purchase, they have an idea, generally, unless their business was so great that they couldn't isolate these people, and then there is a telephone call and the substance of that call has been related

here in court, and the officers arrived shortly thereafter. The defendants already know who it is. Why play legalese games? . . ."

Here the "legalese games" are not being played by Officer Hancock. He was duty bound not to divulge the name of the informant because of his promise to the informant and for public policy reasons. The "legalese games" were being played by defense counsel seeking a dismissal for the failure of the officer to disclose the name even though the record shows that the defendants undoubtedly knew who the informant was by reason of Officer Hancock's *in court* testimony.

Section 1042(d) was carefully drafted to provide a procedure whereby the trial court should consider both the *in court* and the *in camera* testimony in making the disclosure determination to insure defendants received a fair trial while recognizing the public policy in respect to police informants. The law is not or should not be "silly" or "ridiculous." The Legislature never intended that a criminal complaint be dismissed for failure to disclose the name of an informant merely because an officer will not state his name where it is clear from the *in court* evidence defendants already have that knowledge.

Accordingly, I conclude, based on the uncontradicted *in court* testimony of Officer Hancock in respect to the telephone conversation between the informant and defendants, that there is no reasonable possibility that refusal to merely disclose the name of the informant would deprive defendants of a fair trial because they already had knowledge of the identity of the informant.

SECOND: Even assuming defendants did not have knowledge of the identity of the informant, I conclude from the *in court* and *in camera* evidence that the court properly ruled that disclosure of the identity of the informant was not a prerequisite to a fair trial.[6]

[6]Section 1042(d) provides the procedure for determining the disclosure issue, in part, as follows: "[A]t the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. . . . The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial."

" '[I]t is the general rule, subject to certain exceptions and limitations . . . that the prosecution is privileged to withhold from an accused disclosure of the identity of an informer.' (76 A.L.R.2d 271; *Roviaro* v. *United States* (1957) 353 U.S. 53 [1 L.Ed.2d 639, 77 S.Ct. 623]; *Scher* v. *United States* (1938) 305 U.S. 251 [83 L.Ed. 151, 59 S.Ct. 174]; *People* v. *McShann* (1958) 50 Cal.2d 802, 806-807 [330 P.2d 33].) As said in *Roviaro* v. *United States, supra,* 353 U.S. 53, 62 [1 L.Ed.2d 639, 646], 'We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' (See Note, 1 L.Ed.2d 1998.)" (*People* v. *Pacheco* (1972) 27 Cal.App.3d 70, 81-82 [103 Cal.Rptr. 583].)

Here, the informant merely pointed the finger of suspicion at the defendants and Officer Hancock's subsequent independent narcotic investigation resulted in their arrest. The narcotic paraphernalia and the purse were in plain view on the kitchen table of an apartment where defendants lived and on which defendant Coleman paid the rent.

In the instant case the informant told Officer Hancock that he saw users buy a $10 bag of heroin from defendant Dukes at defendant Coleman's residence while she was present. Officer Hancock overheard the telephone conversation between the informant and defendant Coleman where the informant inquired if everything was cool and the stuff was still there and Coleman replied, "Yes, *we* still have the stuff." (Italics added.)

However, defendant Coleman was *not* charged with *sale of heroin* in violation of Health and Safety Code section 11352 (hereinafter section 11352). She was charged with *possession for sale* in violation of section 11351 and *actually convicted* of *possession of heroin* in violation of section 11350, a lesser included offense.

The case of *People* v. *Aguilera* (1976) 61 Cal.App.3d 863 [131 Cal.Rptr. 603], cited in the majority opinion is also factually distinguishable. In *Aguilera* defendants were charged with possession for sale of heroin in violation of section 11351. The trial court held that the People must either disclose the identity of the informant or reduce the charge to

simple possession (section 11350). The prosecution requested an *in camera* hearing pursuant to section 1042(d) and *offered* to produce the informant in chambers for questioning by the court. The trial court refused to conduct an *in camera* hearing and since the People exercised the privilege the court ordered the charge reduced to a charge of simple possession. The reviewing court held the trial court erred in refusing to conduct the *in camera* hearing since the informant could give no testimony that someone else and not defendant was engaged in sales at the residence or that defendant did not possess the heroin for purposes of sale.

In the instant case the two separate trial judges conducted *in camera* hearings and both defendants, Dukes by a plea bargain and Coleman following trial, were convicted of simple possession of heroin (section 11350). Clearly here the evidence in the *in court and in camera* hearings shows there is no reasonable possibility the informant could aid the defendants on the charges *of which they were convicted.*

In *People* v. *Perez* (1965) 62 Cal.2d 769 [44 Cal.Rptr. 326, 401 P.2d 934], cited in the majority opinion, the appellate court reversed a judgment of conviction in a possession of marijuana (section 11530) case for the trial court's refusal to require disclosure of the identity of the informant. The *Perez* case is clearly factually distinguishable from the instant case in that in *Perez* the defendant claimed an unknown person placed the marijuana where it was found. Here neither defendant Dukes nor Coleman claimed that some unknown person placed the narcotics paraphernalia on the kitchen table which was observed and seized by the police. Defendant Coleman at trial pointed the finger at her codefendant, Dukes, who lived with her as the real culprit and denied knowledge but she did not even subpoena Dukes to testify at her trial. I conclude from the total evidence *in court and in camera* that the informant could not aid either defendant in their defense.

Moreover, in no way could the informant aid defendant Coleman in her claimed defense that defendant Dukes planted the balloon of heroin in her purse after the police arrived and while she was purportedly unconscious because the record shows the only others present were the police officers and Dukes. It is not clear from the record whether witness Ronell Smith was in the kitchen at the time but the record is clear that he was not the informant.

In the case of *People* v. *Pacheco, supra,* 27 Cal.App.3d 70, also cited in the majority opinion, defendant was convicted, following a jury trial, of possession of marijuana, barbiturates and methamphetamine. One of the grounds on which defendant appealed was that the court erred in failing to order disclosure of the identity of an informer. Defendant contended that he did not reside in the apartment in which he was arrested and the contraband found, did not know it contained contraband, and there were numerous other people in the apartment to which it could have belonged.

The appellate court reviewed the entire record including the transcript of the *in camera* hearing and in affirming the judgment of conviction said, among other things, at page 81: "[A]ssuming, however, that there is a bare possibility that the informant's information could possibly benefit defendant, that benefit would be of so little value that it should not be weighed against the great harm to the public and to the informant which would result from the disclosure of the informant's identity. [¶] If the informant's identity must be disclosed under the circumstances here, then under no circumstances could an informant's identity be withheld. This would be the end of the informer system, which has been of great help to and regarded as a necessity for law enforcement and which has existed from the very beginning of police work. The vast majority of information concerning crime received by police authorities comes from informants who would not give such information if they could not be promised concealment of their identity. There are instances in which depriving a defendant of the identity of the informer would deny the defendant a fair trial (in which event his identity should be disclosed), but this is not such an instance."

Here, the undisputed evidence is that the only people who lived in the apartment were the defendants and defendant Coleman's five-year-old son and the above quoted language from *Pacheco* is equally applicable.

FINALLY, here the majority opinion holds *that Coleman* has, *without a factual statement* of what the informer will say if required to testify, *"demonstrated* a 'reasonable possibility that the anonymous informant . . . could give evidence on the issue of guilt which might result in [her] exoneration,' " (italics added) citing *Price* v. *Superior Court* (1970) 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721], Mosk, J., concurring and dissenting, Burke and McComb, JJ., dissenting.

Thus, as I construe the majority opinion it apparently grafts onto section 1042(d) a judicially created requirement that the evidence presented by the People during the *in camera* hearing must conform to the requirements of an affidavit supporting a valid search warrant as discussed in *Price* v. *Superior Court, supra,* 1 Cal.3d 836. In my opinion (1) the Legislature never intended such a construction, (2) *Price* is clearly factually distinguishable, and (3) the imposition of such a stringent requirement on all *in camera* hearings conducted under section 1042(d) is impractical and could work to undermine the sound public policy behind the privilege in respect to nondisclosure of police informants.[7]

"In clothing the court with authority to balance the necessity for confidentiality against the necessity for disclosure in the 'interest of justice,' Evidence Code section 1040 vests the court with discretion." (*People* v. *Superior Court* [*Biggs*] (1971) 19 Cal.App.3d 522, 534 [97 Cal.Rptr. 118].)

Section 1042(d) sets forth the procedure for the court to exercise its discretion. It is important to note that section 1042(d) requires that the determination as to whether or not the identity of police informants should be disclosed at the peril of a dismissal is based on "evidence" introduced during the *in court* and the *in camera* hearings and not solely on the *in camera* hearing. The word "evidence" is broad and as pointed out by Justice Mosk in his concurring and dissenting opinion in *Price* v. *Superior Court, supra,* 1 Cal.3d 836, even in search warrant situations "It is clear, of course, that an affidavit may be based upon hearsay if there are underlying circumstances related in support thereof. (*Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509].)" (1 Cal.3d at p. 845.)

Moreover, the Legislature by the language in section 1042(d) did not make it mandatory to disclose the identity of the informant during the *in camera* hearing stating that "the prosecution may offer evidence which

[7] " 'The common-law privilege of nondisclosure is based on public policy. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." [Citation.] The informer is thus assured of some protection against reprisals. The use of informers is particularly effective in the enforcement of sumptuary laws such as those directed against gambling, prostitution, or the sale and use of liquor and narcotics. Disclosure of the informer's identity ordinarily destroys his usefulness in obtaining information thereafter.' (*People* v. *McShann,* 50 Cal.2d 802, 806 [330 P.2d 33].)" (*People* v. *Aguilera, supra,* 61 Cal.App.3d 863, 867.)

would [only] *tend* to disclose . . . the identity of the informant to aid the court in its determination . . . ." (Italics added.) The prosecution need not produce the informant at the *in camera* hearing as it *offered* to do in *People* v. *Aguilera, supra,* 61 Cal.App.3d 863.

## CONCLUSION

Accordingly, by reason of the foregoing, I conclude that the trial court's participation in the Dukes' plea and the court's findings in respect to Coleman's demand for disclosure of the anonymous informer were legally proper in all respects and defendant Coleman received a fair trial.

I concur with the conclusions of the majority that there was probable cause to arrest both defendants and that the subsequent search was valid. I further conclude that substantial evidence supports defendant Coleman's conviction.

## DISPOSITION

I would therefore affirm the judgments of conviction as to both defendants Dukes and Coleman.

Respondent's petition for a hearing by the Supreme Court was denied September 28, 1977.