Opinion
KINGSLEY, Acting P. J.
By petition filed in the juvenile court, it was alleged that Tracy J. was a minor who came within the provisions of Welfare and Institutions Code section 602. In count I it was alleged that Tracy had committed the felony offense of robbery in violation of Penal Code section 211. In count II it was alleged that Tracy had assaulted the victim by means likely to produce great bodily injury, a felony, in violation of Penal Code section 245, subdivision (a).
Tracy denied the allegations of the petition. He also moved to suppress statements made by the three minors originally detained by the police during their investigation of this matter. Tracy also moved for the disclosure of the identity of an informant, on the ground that said informant was a material witness with respect to the issue of identity of the two perpetrators of the crimes. The motions were denied, although *475 the trial court later, at the adjudication hearing, reversed in part its ruling on the suppression-of-evidence motion.
After the prosecution had presented its case in chief, the minor moved to dismiss the petition pursuant to Penal Code section 1118.1; the motion was denied.
At the conclusion of the adjudication hearing the court found the allegations of the petition to be true and sustained the petition as to both counts. The minor, Tracy, was made a ward of the juvenile court pursuant to the provisions of Welfare and Institutions Code section 602. His motion for a rehearing was denied. At the disposition hearing, Tracy was committed to the California Youth Authority for a maximum of four years, the confinement on counts I and II to run concurrently.
I

The Factual Background

Our record reveals that the crime involved here was a purse snatch, committed by two young males. On April 14, 1978, the victim, a 64-year-old female, Lorene Sample, was standing at her mailbox at about 2 p.m. when she felt a tug at her purse, strapped over her left shoulder. She turned and saw a young male within inches of her purse, pulling at it; another young male stood behind him.
The victim screamed. Her assailant continued to pull at her purse and dragged Mrs. Sample down some porch steps and onto the driveway. The victim fell, injuring her back. Her purse strap broke, and the assailant grabbed the purse. Both youths started to run.
Mrs. Sample’s husband and son chased the two fleeing youths. Two paramedics who happened to be on the street saw the pursuit. They contacted the police, and their description of the suspects was broadcast. Later, after the police had interviewed the victim, a fuller description was broadcast. The police helicopter was dispatched to the scene, as were investigating police officers. At some point after the police investigation commenced, two police officers were contacted by an unidentified informant in the neighborhood. This informant told them he had seen a young male, Stacey T. and another youth run by; that Stacey had told the informant he, Stacey, had just “ripped off” a purse. According to the testimony of the police officers at the trial, the informant had said that he *476 had not seen the face of the other individual, although the informant saw him run off on the other side of the street.
The paramedics subsequently contacted the police again and reported that three minors had appeared in the neighborhood, two older youths who looked like the suspects and a young boy. The police arrived and detained the three minors, Stacey T., Jeffrey J. and five-year-old Michael J. The victim, Lorene Sample, was brought to the scene and observed the two older boys. There is a conflict in the testimony of the two police officers concerning Mrs. Sample’s field identification. One officer testified that she identified both youths, but the other officers testified that she identified Stacey T. as the taller boy who stood behind her assailant but that she wasn’t positive that Jeffrey J. was the individual who actually grabbed her purse, although he looked very much like him.
Stacey T. and Jeffrey J. were handcuffed and taken to the police station. Five-year-old Michael J. was also transported there, but in another vehicle, as the police did not wish to leave him unattended. Michael identified himself as a nephew of Jeffrey J. and Tracy J., and advised the police that they had the wrong suspect in custody, i.e., Jeffrey J.; the real culprit, according to Michael, was Jeffrey J.’s younger brother, Tracy J. These statements of Michael were suppressed for purposes of the adjudication hearing. At the police station, Stacey T. was detained, but Jeffrey J. was released.
A few days later, the police showed a series of six photographs to the victim, Lorene Sample; no photograph of Jeffrey J. was included, but one of Tracy, the minor on this appeal, was included. Jeffrey and Tracy, two years apart in age, look very much alike. From these six photographs, Mrs. Sample identified Tracy as the principal purse snatcher, and he was arrested later the same day. In her testimony at the trial, Mrs. Sample also identified Tracy as the purse snatcher.
II

Discovery of the Identity of the Informant

On this appeal, Tracy first contends that the trial court committed prejudicial error when it ruled that the police informant was not a material witness whose, identity need be disclosed. He also challenges the sufficiency of the evidence, the constitutionality of -the use of referees as hearing officers in the juvenile court, and the sentencing of this minor *477 pursuant to Welfare and Institutions Code section 726 as a violation of the equal protection provided by both the California and the federal Constitutions. Since we have concluded that the minor is correct with respect to the contention that he had a right to the discovery of the identity of the police informant, we find it unnecessary to reach the other issues.
When it appears from the evidence that an informer is a material witness on the issue of guilt or innocence and a defendant seeks disclosure of such informer’s identity, the prosecution must either disclose his identity or incur a dismissal of the action. (People v. Hunt (1971) 4 Cal.3d 231, 239 [93 Cal.Rptr. 197, 481 P.2d 205].) In this situation, nondisclosure deprives a defendant of a fair trial. (Price v. Superior Court (1970) 1 Cal.3d 836, 842 [83 Cal.Rptr. 369, 463 P.2d 721].) A defendant seeking disclosure of an informer’s identity bears the burden of demonstrating that there is “a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant’s exoneration.” (People v. Garcia (1967) 67 Cal.2d 830, 840 [64 Cal.Rptr. 110, 434 P.2d 366].)
In the case at bench, a police officer testified that the informant had seen the two boys running away from the scene of the crime; that the informant said he spoke to Stacey T., one of the two; that he saw the other running but did not see his face. The informer identified Stacey T. to the police. Upon the basis of this testimony, the trial court ruled that the informant was not a material witness with respect to the identity of the second individual, although the minor’s counsel had moved for disclosure in order to be given an opportunity to interview the informer as a prospective witness. The minor points out that, even if the informant had not seen the face of the second individual, there was other information he could possibly have provided, such as a description of the individual’s height or clothing. The Attorney General contends that the issue of identity of the perpetrator was a very narrow one, involving a choice between which of the brothers—Jeffrey J. or Tracy J.—was involved in the crime. Under these circumstances, it is suggested that the informant’s failure to see the face of the youth who was with Stacey precluded any meaningful assistance from that quarter.
We note first of all that this informant was a witness to the flight of the two suspects from the scene of the crime. Particularly in a case where there is a real question of identity, any witness who might be able to cast *478 light on that issue would be material. In the case before us, the materiality of the informer’s possible testimony could not be determined by the characterization of his statement to the police by a police witness or by conclusions drawn from such statement by such police witness. The testifying police officer is not the arbiter of the matter, nor may the trial court accept him as such. It was explained in People v. Coleman (1977) 72 Cal.App.3d 287, 298 [139 Cal.Rptr. 908], that such an officer’s “bald opinion ... is not competent to prove anything.” This is especially true in the case at bench, as the officer’s opinion would undoubtedly be influenced by his desire not to disclose, if possible, the identity of the informant.
Here, assuming that the informant did not see the face of the second individual, the informant did see his person and might well have noticed other things about him that would distinguish him from other persons, whether related to him or not.
III
For the reasons above stated, we reverse the orders. We must, therefore, consider what action the trial court should take on remand. We conclude that the People, if they so desire, and elect to again proceed against the minor, may request an in camera proceeding under section 1042 of the Evidence Code.
We are aware of the decision in People v. Viramontes (1978) 85 Cal.App.3d 585 [149 Cal.Rptr. 607], but conclude that the case is distinguishable. In that case, the trial court had ruled against the People on the issue of materiality, and had dismissed the prosecution. The Court of Appeal affirmed the dismissal, holding that the People could not raise the issue of an absence of an in camera hearing when they had failed to raise the issue of privilege after the ruling on materiality. Here, however, the trial court ruled in favor of the People on the materiality issue. Under those circumstances, the People had no reason (and perhaps no right)[1] to request a hearing on the privilege issue. Here we have decided that the trial court erred on the issue of materiality. Thus, for the first time, the trial court is in a position to hold the in camera hearing. We conclude that the People, now, have the right to such a hearing if they desire it.
In so holding, we see no problem of “gambling” by the People. Where, as in Viramontes, the People have lost on one of the two issues going to *479 disclosure, it is only proper to require them to litigate the second promptly or to be held to have waived (or perhaps conceded their inability to prevail on) the second. But where the People win, in the trial court, on one of the two issues, there is no reason for them to seek to gild the lily by securing another and cumulative victory on the second issue.
The orders appealed from are reversed for further proceedings consistent with this opinion.
Alarcon, J., concurred.

An issue we do not, and need not. decide in this case.