[Crim. No. 8315.   Second Dist., Div. Four.   Oct. 9, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. VINCENT LUJAN ORTIZ, Defendant and Appellant.

Vincent Lujan Ortiz, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County, defendant and his wife (not appealing here) were jointly charged with a violation of section 11500 of the Health and Safety Code, possession of heroin. Three prior felony convictions were alleged as to defendant which were initially denied but later, out of the presence of the jury, admitted to be true. Defendant entered a plea of not guilty. After a jury trial defendant was found guilty as charged. Motion for a new trial and probation were denied, and defendant was sentenced to state prison for the term prescribed by law.

Defendant applied to this court for appointment of counsel to assist him on appeal. This court, having made an independent investigation of the record and having determined that it would be neither advantageous to defendant nor helpful to this court to have counsel appointed, denied the application, whereupon defendant prosecutes this appeal in propria persona. This is an appeal from the judgment and order denying motion for new trial.

Harry E. Dorrell, a police officer assigned to the narcotics division, testified that he had known defendant for about a year before the arrest. During that time he had received information from various sources that defendant and his wife were selling and using narcotics. A day or two before the arrest he had recived information that they had 22 ounces of heroin in their possession. Defendant and his wife were staying at a motel in the City of Los Angeles. Officer Dorrell, accompanied by a fellow officer, went to the motel and showed photographs of defendant and his wife to the motel manager who admitted that the same persons were occupying a room in the motel. Defendant and his wife were not in at the time, and the manager permitted the officers to use a vacant room next door to the unit occupied by defendant.

The officers were in the motel room looking out the window when they first observed defendant and his wife in the motel parking lot. As they were walking to their motel unit, defendant and his wife were stopped by the officers who identified themselves. Defendant's wife was asked if she was still using narcotics, and she replied that she was. Defendant was also asked if he was still using narcotics, and he answered that he was. The officers observed what appeared to be fresh hypodermic needle marks on defendant's arm, and on the hands and wrists of his wife. The officers asked defendant to show him where he was taking narcotics. Defendant began to take

off his coat, and one of the officers said "Never mind, I will take your word for it." At the request of the officers, defendant's wife voluntarily gave the room key to the officers who then asked if there were any narcotics inside the room. Defendant replied, "No, you can go ahead and search it."

The officers asked if they could search defendant, and defendant said "Go ahead." Defendant stated he gave permission for the search because he was "pretty certain he didn't have anything on him against the law." He stated he didn't think there was any more "stuff" (which in narcotics jargon means heroin). They searched defendant's person and found a cigarette package with five rubber containers in it, each containing a quarter ounce of a whitish powder resembling heroin. The officers asked defendant what he was going to do with it and defendant said he was going to "burn somebody." Defendant stated he had picked it up just before he entered the room. The officers made a search of the spot which he pointed out and found two more rubber containers, each holding the whitish powder resembling heroin.

Defendant testified in his own behalf. He stated that he stopped before they went in the motel room to ask his wife for the key. She told him the house key was in the package of cigarettes in the plants outside the motel unit. She asked him to get it because she didn't want to get her shoes dirty. He picked up the package which, a few minutes later, the officers took away from him. Defendant denied to the officers that he was using narcotics.

At the preliminary hearing defendant's counsel stipulated to the qualifications of the prosecution's witness as an expert chemist and to the fact that if called he would testify that the substance contained in the cigarette package was heroin. Defendant was present when his counsel entered into this stipulation, and he remained completely silent in this regard. At the trial before the jury, a forensic chemist, employed by the police department as a criminologist, testified that in his opinion the powder was heroin.

Defendant contends "the main and sole issue on appeal is whether the preliminary hearing magistrate exceeded his jurisdiction to commit him to stand trial pursuant to the California Constitution, Article I, section 8, subdivision 3, in that he was not confronted with the forensic chemist at the time of his preliminary hearing in that his attorney stipulated to the chemist's testimony at the preliminary hearing."

Substantially the same factual situation and contention was

presented in *People* v. *Prado,* 190 Cal.App.2d 374, 376 [12 Cal. Rptr. 141], which quoted from *People* v. *Wilson,* 78 Cal.App. 2d 108, 119-120 [177 P.2d 567], in support of its decision: "Defendant was present and heard her attorney enter into the stipulations. She at no time objected thereto nor sought to be relieved therefrom, nor did her attorney make any such request in her behalf. No contention is advanced that the stipulations were not in accordance with the facts. . . . defendant was not prejudiced thereby."

Defendant argues in his brief that by his attorney's stipulation he was denied the right to be confronted by the witnesses at his hearing. If defendant felt that his counsel should not have made the stipulation, he should have complained at that time and given the court an opportunity to correct the situation. In the absence of such complaint the acts of defendant's counsel are imputed to him. "The right of the accused to confront witnesses at his trial, whether reserved in the Constitution or in statutes, may be waived. [Citations.]" (*People* v. *Wallin,* 34 Cal.2d 777, 781 [215 P.2d 1].)

Defendant also argues in his brief that he and his wife were committed to stand trial for an offense not proven to exist. "[H]e does so despite the fact no motion was made under section 995, Penal Code, nor did he raise the question at the trial. Section 995 provides that an information may be set aside if the defendant has been committed without probable cause; in section 996, Penal Code, it is provided as follows: 'If the motion to set aside the indictment or information is not made, the defendant is precluded from afterwards taking the objections mentioned in the last section.' " (*People* v. *Stone,* 195 Cal.App.2d 282, 289-290 [15 Cal.Rptr. 737].)

Judgment of conviction is affirmed. Purported appeal from order denying motion for a new trial is dismissed.

Burke, P. J., and Ford, J.,* concurred.

A petition for a rehearing was denied October 24, 1962, and appellant's petition for a hearing by the Supreme Court was denied December 5, 1962. White, J.,† participated therein.

---

*Assigned by Chairman of Judicial Council.

†Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.