[Crim. No. 31878. Second Dist., Div. Three. Sept. 26, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
DANIEL CARRILLO VIRAMONTES, Defendant and Respondent.

586

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Daniel L. Bershin, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Samuel Parks and Stephen F. Moeller, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**POTTER, J.**—This is an appeal by the People (Pen. Code, § 1238, subd. (a)(8)) from an order dismissing an information which charged defendant with possession of heroin for sale (Health & Saf. Code, § 11351). The order was entered after the People refused to disclose the identity of a confidential informant.

The following are the facts, as adduced from the evidence presented at the preliminary hearing and from the subsequent superior court hearing. Defendant, at all times during the events that transpired leading to his arrest, was a parolee under the supervision of Parole Agent Salvador Baca. As per an "Agreement of Parole," which was admitted in evidence at the preliminary hearing and stipulated into the record at the superior court hearing, Agent Baca had the right to enter and search the parolee's

residence without first having to obtain either a search warrant or the parolee's consent. Defendant listed as his address on the agreement a residence on Isora Street in Pico Rivera. Twice in December of 1976, and once on January 5, 1977, Agent Baca had attempted to visit with defendant at the Pico Rivera location, but only once in December was he able to find the defendant at that address.

On December 3, 1976, and again on December 20, 1976, Deputy Sheriff Raymond Sanchez, at that time assigned to the Narcotics Bureau at the Pico Rivera station, received information from informants that defendant was dealing heroin from the Pico Rivera address. On January 5, 1977, Sanchez received information from a confidential informant that the defendant had moved to an apartment on Fremont Square in Montebello and that the informant had personally seen the defendant inside the apartment. The informant also told Sanchez that people would call the defendant at that location and that he would then meet them approximately a half block away on Poplar Street. Deputy Sanchez contacted Agent Baca and provided him with all of the aforementioned facts.

On January 19, 1977, Sanchez received a call from Deputy John Madden of the Industry station who informed him that he had been told by a confidential informant that defendant was residing at the Montebello address and that he was dealing heroin from there. (None of the heretofore mentioned informants are the same persons.) Sanchez contacted Agent Baca on January 25, 1977, and related to him that information, as well as the fact that other officers had observed defendant at the Montebello apartment. Later that afternoon, Baca requested that Deputy Sanchez accompany him to the apartment, as it was Baca's intention "to go and see the subject and based on information he may be dealing, to search the premises and see if there were any narcotics at the premises."

Sanchez and three other deputies met Baca at the Montebello police station and then proceeded to the apartment on Fremont Square where they knocked on the door. Agent Baca identified himself to defendant and told him that they wanted to come in and talk with him. After some hesitation, defendant produced the key which unlocked the front screen door and the officers entered the apartment. After Agent Baca told defendant that he intended to have the apartment searched, Sanchez visually inspected defendant and performed a test on him to determine if defendant was under the influence of narcotics.

At the preliminary hearing, Sanchez, who claimed to have testified at more than 200 trials concerning the issue of whether a person was under the influence of a narcotic, stated that it was his opinion that defendant was under the influence of an opiate, a conclusion which he reached after noticing recent puncture marks on defendant's arms, plus "[t]hat fact and his eyes being restricted, his movements slow and deliberate, his speech slow and his eyes droopy . . . ."

Pursuant to the search, 61 grams of powder containing heroin were recovered, some of it in balloons found in a leather jacket in a bedroom closet, and the remainder in balloons seized from the bedroom dresser. Sanchez testified that he had previously seen defendant wearing "a similar looking jacket," although he was unable to positively identify the leather jacket as the same one he had seen before.

Defendant's winter coat was found draped over the couch in the living room. There was men's clothing in the bedroom closet of the one-bedroom apartment, although neither Baca nor Sanchez were able to offer any evidence which would have tended to connect defendant with that clothing. During the search, none of the usual indicia of occupancy of the apartment was discovered, i.e., there was no name on either the mail box or the front door, nor any correspondence or bills addressed to the defendant at that address. But subsequent to his arrest, defendant was able to produce a set of keys for the officers to enable them to secure the premises.

Only Agent Baca and Deputy Sanchez testified at the preliminary hearing on February 11, 1977. On April 12, 1977, defendant moved to suppress all the evidence seized without a search warrant (Pen. Code, § 1538.5) and also to disclose the identity of the informants, claiming that they were material witnesses in the case. These motions were heard on July 28, July 29 and August 2, 1977. Baca and Sanchez again testified for the People. (Their testimony was in addition to that which they had given at the preliminary hearing, as it was stipulated that the transcript from that hearing would be received into the record.) The defense introduced two of its own witnesses. (One was defendant's aunt and the other was a working acquaintence of defendant.) Their testimony tended to show that defendant had been residing exclusively at the Pico Rivera location and had done so continuously since September 1976.

There was some confusion at the hearing on the motions, as neither the court nor opposing counsel indicated at the outset that the two motions

were to be heard separately. The suppression issues were investigated first, and at one point defense counsel objected to an expansion to include the disclosure issue. However, defense counsel did ask that "the transcript—and what we have got, be used also if we get [to] the Eleazer issue." The People never asked that any of the evidence be limited solely to one or the other issue. As there were no express or implied limitations placed on the use of the evidence at the superior court hearing, this court, on appeal, has before it all of the testimony that was given at that hearing as well as the transcripts and exhibits from the preliminary hearing.

The court denied defendant's Penal Code section 1538.5 motion and also found that the informant who had spoken with Deputy Madden on January 19, 1977, was not a material witness in the case. The court, though, did find that the informant who had conversed with Deputy Sanchez on January 5, 1977, was a material witness since he, unlike the January 19 informant, claimed to have personal knowledge of defendant's utilization of the Fremont Square location. Deputy Sanchez refused to disclose the identity of that informant, claiming the privilege under Evidence Code section 1041. The People did not request an *in camera* hearing (Evid. Code, § 1042, subd. (d)), and the court ordered the case dismissed.

## CONTENTION

The People's sole contention on appeal is that the trial court erred in finding that the informant was a material witness in the case. Defendant controverts this contention. We hold that the record substantiates the finding of the trial court as to the materiality of the January 5 informant. Further, the People's failure to request an *in camera* hearing forecloses any claim of error in that respect and effectively bars them from asserting that such a hearing should have been held.

## DISCUSSION

*The Court's Finding That*
*the Informant Was a Material*
*Witness on the Issue of*
*Guilt in the Case Was Proper*

"If a review of the record indicates there was evidence to support the trial court's finding that defendants were entitled to disclosure of the identity of the informer, we are required to sustain the trial court's

finding." (*People* v. *Tolliver* (1975) 53 Cal.App.3d 1036, 1050 [125 Cal.Rptr. 905].)

■ The test to determine whether disclosure should be required was set forth by our Supreme Court in *People* v. *Garcia* (1967) 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366], where the court stated: "We emphasize that a defendant seeking to discover the identity of an informant bears the burden of demonstrating that, 'in view of the . evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' (*People* v. *Williams, supra,* 51 Cal.2d 355, 359 [333 P.2d 19]; see *People* v. *McShann, supra,* 50 Cal.2d 802, 808 [330 P.2d 33].) That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration. 'No one knows what the undisclosed informer, if produced, might testify.' " (Fn. omitted.)

The problem that the courts have faced in applying this standard is in determining what constitutes a "reasonable possibility," and in trying to ascertain, prior to an informant's testimony, what he "might" testify to if he were forced to come forth with his story.

In *People* v. *Aguilera* (1976) 61 Cal.App.3d 863, 868 [131 Cal.Rptr. 603], this type of determination was characterized as a "guessing game." Even the *Garcia* court had difficulty with its own standard, as indicated by *People* v. *Hunt* (1971) 4 Cal.3d 231, 240 [93 Cal.Rptr. 197, 481 P.2d 205], where it was stated: "[I]n *Garcia* we could only speculate that he had such information." In spite of this necessity, the court in *Garcia* held that the informant's testimony was material.

It thus seems clear that a court may speculate to some extent in order to determine a witness' materiality. Such was the ruling in *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 420 [112 Cal.Rptr. 485], where the court stated: "It seems, accordingly, to some degree, speculation may properly play a part in the application of a standard which is couched in terms of a reasonable 'possibility' that the undisclosed informant could give evidence which 'might' result in the defendant's exoneration. [Citation.]"

■ In the case at bench, the People had little evidence, besides the fact that defendant was seen at the Montebello apartment and was later

arrested there, that would tend to establish that he did in fact reside at that location and not at the home of his aunt in Pico Rivera. The jacket containing the heroin was not positively identified as belonging to him, nor was any indicia of his occupancy discovered at the apartment. Defendant's witnesses testified that he did in fact reside at the residence in Pico Rivera and not in Montebello, giving rise to the inference that defendant was only temporarily visiting the apartment or taking care of it for a friend.

The informant, who claimed to have personal knowledge concerning the location, might possibly have been able to testify that he had seen other people at that address who manifested occupant status or exercised control over the contraband.

The People point out that the informant's information was 20 days old at the time of the search and alleged offense of possession for sale and assert that the decisions in *People* v. *Alvarez* (1977) 73 Cal.App.3d 401 [141 Cal.Rptr. 1], and *People* v. *Martin* (1969) 2 Cal.App.3d 121 [82 Cal.Rptr. 414], are controlling. Their reliance on these cases is misplaced. In both of them, the defendant admitted living in the apartment in which the contraband was found. In *Martin,* the court said (2 Cal.App.3d at p. 128): "Unlike the situation in *People* v. *Garcia,* 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366], . . . defendant admitted living at the apartment . . . ." His defense was "that on September 7, 1968, the contraband belonged to and was brought to the premises by another." (*Ibid.*)

Virtually the same situation existed in *Alvarez.* "After advice and waiver of his constitutional rights, defendant stated that he had lived at the location alone for approximately five months; that everything found was his; and that he did not sell heroin, he only used it." (73 Cal.App.3d at pp. 404-405.)

The situations in *Alvarez* and *Martin* were of such transient nature that information several days old would not have been probative. But that is not the case here where the only issue raised by defendant's indicated defense was that he was not the occupant of the apartment. This is a status which is of more permanent duration. The informant's testimony as to the occupant status of another party 20 days before the charge of possession would have probative value.

"A thing continues to exist as long as is usual with things of that nature." (Civ. Code, § 3547.) " 'Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time.' " (*Noell* v. *United States* (9th Cir. 1950) 183 F.2d 334, 338.) Consequently, *Martin* and *Alvarez* are not controlling, and the trial court's finding that there was a reasonable possibility the informant was a material witness on the issue of guilt must be upheld.

*In the Absence of a Request*
*for an In Camera Hearing,*
*the Dismissal Was Proper*

The evidence supporting the materiality of the informant's testimony was not strong. The posture of the case in the trial court manifested those "guessing game" qualities which often attend these determinations. (*People* v. *Aguilera, supra,* 61 Cal.App.3d at p. 868.) However, the People had available to them appropriate procedures to eliminate such a guessing game. They could have requested the court to hold an *in camera* hearing, pursuant to Evidence Code section 1042, subdivision (d). "Subdivision (d) expressly provides that the very purpose of the *in camera* hearing is 'to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial.' " (*Williams* v. *Superior Court, supra,* 38 Cal.App.3d at p. 425.)

Though the People had the opportunity, they did not make such a request. Having failed to avail themselves of the statutory procedure which "allows the prosecutor to produce the informant *in camera* so that the court can determine just what the informant knows, and whether his testimony would be material on the issue of guilt" (*People* v. *Aguilera, supra,* 61 Cal.App.3d at p. 868), the People cannot now complain that the record in this respect is uncertain.

The judgment (order of dismissal) is affirmed.

Cobey, Acting P. J., and Allport, J., concurred.