[Crim. No. 29890. Second Dist., Div. One. Dec. 26, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS INGRAM, Defendant and Appellant.

**COUNSEL**

Paul Halvonik, and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Joel F. Franklin and Aurelio Munoz, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—The court found defendant Ingram and codefendant Evans guilty of possession of heroin. Defendant appeals from the judgment. His main contention is that the trial court erred in denying his motion to disclose identity of the informant.

On May 12 Officers Wesselink and Richardson received information from an informant regarding narcotics activity in apartment 107 at a Hollywood address—"a male Negro approximately 25 to 35 years old, five-six, five-seven, 140, and a male Negro, a drag queen," describing him, going under the name of "Rachel," were using and selling heroin from apartment 107; "the day prior, or the evening prior" (May 11), he purchased heroin from the "drag queen" (Evans) and "there was also another male Negro inside the location, the same description I described earlier."

Around 11 a.m. on May 12 the officers went to apartment 107 to conduct a narcotics investigation; one of them knocked on the door, identified himself and stated his purpose; after a short delay Evans, wearing a baby doll nightgown, opened the door. The officers informed him they were there to make a narcotics investigation, and Evans admitted them; although they did not ask permission to search the apartment, Evans said they could do so. Defendant was sitting on the bed in his shorts and asked, "Why did you come to our place?"; Officer Richardson replied they were conducting a narcotics investigation, and defendant said, "Well, go ahead and search. We don't have anything to hide." A subsequent search disclosed heroin in the kitchen sink and narcotic paraphernalia in and around the sink, in the cupboard area, on the floor in the kitchen and in Evans' overnight case which was in the kitchen; a receipt for the rent for apartment 107, in the name of "Evans, Rady," was found in Evans' purse also in the kitchen.

Evans and defendant were arrested; defendant asked, "Can I get my clothes?" pointing to the closet; there was other clothing in the closet.

Boxes and miscellaneous clothing were near the door and both defendants said, "We are moving pretty soon." Track marks on the arms of both defendants were more than 12 hours old but had been made within a 21-day period.

A resident security officer testified he had seen defendant on several occasions at apartment 107; once defendant claimed to reside there; Evans told him defendant was merely a visitor who stayed there frequently; defendant's name was not affixed to the rental application and it was not on the apartment mailbox. Another security guard testified that although defendant had informed him he lived in apartment 107, his name did not appear on the tenant list; many "drag queens" frequented the apartment and Evans had other visitors.

Evans testified he lived in apartment 107 and on May 12 was living with defendant, his roommate, who had moved in in April; he is a "drag queen" and uses "the name of Rachel." He denied ownership of the contraband seized in his apartment except for the measuring spoons; he confirmed ownership of the overnight case; he said he did the cooking and cooked at least once a day but denied knowledge of the presence of the heroin in the kitchen; he denied participating in a narcotic sale on May 11.

Defendant's father testified that defendant lives with him at his home on 80th Street and keeps clothing and shaving equipment there; defendant spent the night of May 11-12 away from home.

Defendant testified he lived with his father on 80th Street and had lived there for five or six months; he only slept in Evans' apartment on occasion and had only about two changes of clothing in the closet; he did not have a key to Evans' apartment and the key in his possession at the time of arrest was to his father's place; his name was not on the mailbox at Evans' address and he never told anyone it was his residence. He visited Evans around 7 p.m. on May 11 and as he arrived someone was leaving; he and Evans went to the movies, returned late to Evans' apartment, immediately went to bed and slept until 10 a.m., when Evans admitted a visitor; the visitor left and Evans returned to bed; he did not get out of bed during this time; he was unaware of any narcotics or narcotic paraphernalia in the kitchen; Evans told him he had been asked to move and had packed boxes; he did not give officers permission to search or tell them he and Evans were moving; he was not in the apartment when Evans sold heroin to anyone; he is not an active narcotic

user and marks were from an old operation. The identification card found in his possession at the time of arrest was dated May 11 and it bore the address on 80th Street.

At the commencement of and as part of the trial, defendant moved for disclosure of the identity of the informant. The trial court held an adversary hearing on the issue of disclosure under section 1042, subdivision (d), Evidence Code, and denied the motion.[1] Appellant's claim of error based on this denial has merit.

Defendant's joint possession of the contraband recovered from the kitchen was predicated on his former use of narcotics and presence on the premises. The People's theory was that he was a resident of apartment 107. Defendant's presence in or opportunity of access to Evans' apartment, without more, will not support a finding of unlawful possession (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Mitchell,* 53 Cal.App.3d 21, 25 [125 Cal.Rptr. 543]), and it is highly significant and material to defendant's case if he was but a visitor to the apartment on May 12 (*People* v. *Garcia,* 67 Cal.2d 830, 839 [64 Cal.Rptr. 110, 434 P.2d 366].)

The informant told police he had been in apartment 107 "the day prior or the evening prior" (May 11) and purchased heroin from Evans and another black man; he identified Evans but made no reference to the second man by name and did not identify defendant as that man, and his description was general enough to fit any number of black men who visited Evans' apartment. The informant possessed information which, if disclosed, would either confirm that defendant was the second man in apartment 107 when the informant purchased heroin from Evans the day before, thus demonstrating defendant had knowledge of the presence of the contraband in the kitchen; or establish that defendant was not with Evans when the informant bought the heroin, a fact consistent with defendant's claim that he was but a visitor there on May 12, and cast doubt on the People's claim he knew of the contraband in the sink.

The state of the evidence is such that the informer's identification of the second man is critical to defendant's defense. There is a direct conflict concerning whether defendant resided in apartment 107. Codefendant

---

[1] The court found there was no reasonable possibility that the informer could give evidence on the issue of guilt, and based its finding on the evidence of "indicia of the possession of the premises at the time that the officers went in there"; what occurred on May 11 is not material; Evans and defendant were living there on May 12 and "whether they were visiting that day is not important" and "wouldn't be a defense."

Evans said defendant lived there and was his roommate. Two security guards testified Evans and defendant told them they lived in apartment 107, but admitted that defendant's name was not on the rental application, tenant list or mailbox. Officer Wesselink testified to certain of defendant's statements from which the inference that he lived there was reasonable. Defendant's father testified defendant lived with him on 80th Street. Defendant testified he did not live in apartment 107 but with his father on 80th Street, was a visitor that night in apartment 107 and knew nothing of the contraband; as he arrived around 7 p.m. on May 11 someone was leaving the apartment; and he was not in the apartment when Evans sold heroin to anyone. Defendant's "I.D." card, obtained on May 11, listed his address on 80th Street. There is manifest in the record a clear question of credibility. The informant might have confirmed defendant's testimony that it was not he who was present in apartment 107 on May 11 when he bought heroin from Evans. It would be a most relevant and material fact from which the trier of fact could find that defendant was only a visitor on May 12 and was unaware of the presence of the contraband in the kitchen.

■  The defendant bears the burden of demonstrating that " 'in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' [Citations.] That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration." (*People* v. *Garcia,* 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366]; *Price* v. *Superior Court,* 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721].)

■  Dispositive of the case at bench is *People* v. *Coleman,* 72 Cal.App.3d 287 [139 Cal.Rptr. 908], in which this court found that the informer was a material witness to the possession of heroin. The informant had been present in Lily Coleman's apartment a few hours before the contraband was found; and he knew of the relationship between defendants Dukes and Coleman and that Dukes was the dominant party in it. The officers went there because an informant told them drugs were in her apartment and he had seen narcotic paraphernalia in her purse. Police were admitted to the apartment by Dukes, and Coleman consented to a search. Lily Coleman's defense was that the heroin found in her purse and in her apartment, on which she paid the rent, had been placed there by Dukes without her knowledge. Unlike in the instant case, an *in camera* hearing was had. In reversing Coleman's

conviction, this court found that the evidence produced at the proceedings established that the informant is a percipient witness on the issue of her guilt or innocence; and concluded that Coleman demonstrated a reasonable possibility that the anonymous informant could give evidence on the issue of guilt which might result in her exoneration (72 Cal.App.3d at p. 298).

Here, as in *Coleman,* the informant did not accompany police to the premises; in *Coleman* the informant had been on the premises a few hours before the drugs were found, here the informant was in Evans' apartment the day before; in both cases the contraband was in plain view. However, in *Coleman* the informant identified both defendants by name whereas here only Evans (Rachel) was specifically characterized, and defendant was not identified. As in *Coleman,* the nature of the informant's observations and perceptions while in apartment 107 buying heroin from Evans on May 11 was essential to the exoneration of defendant.

■ Section 1042, subdivision (d), Evidence Code provides that the prosecutor may request the court to hold an *in camera* hearing, a highly advantageous procedure providing an expanded evidentiary base for the court's determination. (*People* v. *Coleman,* 72 Cal.App.3d 287, 298 [139 Cal.Rptr. 908].) "It allows the prosecutor to produce the informant *in camera* so that the court can determine just what the informant knows, and whether his testimony would be material on the issue of guilt." (*People* v. *Aguilera,* 61 Cal.App.3d 863, 868 [131 Cal.Rptr. 603]; *People* v. *Pacheco,* 27 Cal.App.3d 70, 82 [103 Cal.Rptr. 583].) If such a request is made, the court must entertain the same and hold such a hearing outside the presence of the defendant and his counsel. (§ 1042, subd. (d), Evid. Code; *People* v. *Aguilera,* 61 Cal.App.3d 864, 870 [131 Cal.Rptr. 603].) ■ But here the prosecutor chose not to request an *in camera* hearing, and the trial court denied the motion to disclose without knowing whether the informant could identify defendant as the person who was present in apartment 107 on May 11 where he purchased heroin from Evans.

The record on the motion compels our conclusion that defendant established a prima facie case for disclosure. He demonstrated at the adversary hearing that the informant was in a position to perceive ". . . either the commission or the immediate antecedents of the alleged crime." (*Williams* v. *Superior Court,* 38 Cal.App.3d 412, 423 [112 Cal.Rptr. 485] [informant stated to police he was present in defendant's

residence the day before the alleged offense and saw defendant and another person selling heroin; at the time of arrest officers found heroin in defendant's dresser drawer; peremptory writ of mandate issued directing trial court to order disclosure of informant's identity or dismissal of cause]), and a reasonable possibility that the informant could give evidence on the issue of guilt which might result in his exoneration. (*Price* v. *Superior Court,* 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721].)

The error of the trial court is in the denial of the motion to disclose; it cannot be tested for prejudice because in the absence of an *in camera* hearing we do not know to what the informant would testify. The error is not for any failure to entertain a request for an *in camera* hearing because none was made by the prosecutor, or for failure to hold such a hearing because in the absence of a request therefor the statute (§ 1042, subd. (d), Evid. Code) does not require the court to hold an *in camera* hearing on its own motion. On October 25, 1978, the majority of this court held that the error compelled a reversal, and filed its opinion reversing the judgment. On their petition for rehearing, the People requested a limited remand for the purpose of holding an *in camera* hearing. We granted the petition to consider such request.

Appellant submits that the proper disposition in this cause is a reversal of the judgment. He argues that a remand for the purpose of holding an *in camera* hearing under section 1042, subdivision (d), Evidence Code would be improper because, by failing to request such hearing in the trial court the People waived their right thereto, and they are not entitled to a second chance; but if a remand is indicated, it should be made with directions to the trial court to order the People to disclose the identity of the informant or suffer a dismissal. Appellant relies on *People* v. *Borunda,* 11 Cal.3d 523 [113 Cal.Rptr. 825, 522 P.2d 1]; *People* v. *McCarthy,* 79 Cal.App.3d 547 [144 Cal.Rptr. 822] and *Williams* v. *Superior Court,* 38 Cal.App.3d 412 [112 Cal.Rptr. 485].

In the case at bench in which the appeal is from the judgment following a trial on the merits and the trial court had denied defendant's pretrial motion for disclosure, the People did not request an *in camera* hearing, this court has ruled that the trial court erred in holding that defendant failed to make a prima facie showing for disclosure of the informant's identity and the Attorney General has now requested an *in camera* hearing, we conclude that the appropriate disposition is remand to the trial court with directions to vacate its order denying such motion

to disclose and hold an *in camera* hearing. Such disposition is consistent with *People* v. *Blouin*, 80 Cal.App.3d 269 [145 Cal.Rptr. 701], is authorized by section 1260, Penal Code, and a host of cases in which remand has been made thereunder for a limited purpose, and will result in the efficient use of judicial resources.

*Borunda, Williams* and *People* v. *Viramontes,* 85 Cal.App.3d 585 [149 Cal.Rptr. 607] are distinguishable from the case at bench on procedural grounds. In *People* v. *Borunda,* 11 Cal.3d 523 [113 Cal.Rptr. 825, 522 P.2d 1], the issue of disclosure reached the appellate courts in the pretrial stage—the trial court granted defendant's motion and ordered the People to disclose the identity of the informant or suffer dismissal; at that time the People could have requested an *in camera* hearing to prove that nondisclosure of the informant would not deprive defendant of a fair trial but instead, refused to disclose and appealed from the resulting order of dismissal. So too, *People* v. *Viramontes,* 85 Cal.App.3d 585, 587 [149 Cal.Rptr. 607] came to the appellate court in the same way, and as in *Borunda,* there was reason for the People to, but they did not request an *in camera* hearing. *Williams* v. *Superior Court,* 38 Cal.App.3d 412 [112 Cal.Rptr. 485], also reached this court at the pretrial stage, on defendant's petition for writ of mandate. Disclosure had been denied and the People did not request an *in camera* hearing. This court found the trial court erred in denying defendant's motion, and issued peremptory mandate directing the trial court to order the People to disclose on penalty of dismissal for noncompliance. At this stage of the proceedings, this court refused the People's request for an *in camera* hearing because it "would require the appellate court to entertain two successive mandate proceedings to test the denial of disclosure in cases such as this, if, upon remand, the trial court held an *in camera* hearing and adhered to its prior decision. Such a duplication of effort at both trial and appellate levels cannot have been within the intent of the Legislature when it enacted subdivision (d) [§ 1042, Evid. Code]." (P. 425.) Finally appellant cites *People* v. *McCarthy*, 79 Cal.App.3d 547 [144 Cal.Rptr. 822], an appeal from the judgment, for the court's statement: "Where no *in camera* hearing has been held, the lack of knowledge of the informer's testimony requires a disclosure of his identity or a dismissal of the case. (*People* v. *Borunda, supra,* 11 Cal.3d 523.)" (P. 555.) This is pure dicta because an *in camera* hearing had been held and the trial court had denied the motion to disclose. This court ruled the denial was proper and affirmed the judgment. But of more significance, the court neglected to recognize that *Borunda* came to the appellate courts at the pretrial stage, not on appeal from judgment following trial, as in *McCarthy*.

The procedural posture of the case at bench is the same as that in *People v. Blouin,* 80 Cal.App.3d 269 [145 Cal.Rptr. 701]. As here, the trial court denied the motion to disclose, the People made no request for an *in camera* hearing, defendant was tried and convicted and he appealed from the judgment. This court held that the trial court erred in denying the motion for disclosure, and said at page 288: "[Section 1042, subdivision (d)] requires such hearings whenever the prosecuting attorney requests them. No such request was made in this case. In order to eliminate the speculation which is inherent in any case where the record discloses that the informant possesses substantial knowledge of relevant facts such an *in camera* hearing should be requested by the prosecution in order to eliminate the speculation frowned upon in *Garcia* [67 Cal.2d 830, 840, 64 Cal.Rptr. 110, 434 P.2d 366]. [¶] In the instant case the prosecution should be given the opportunity to prove in an *in camera* hearing the informant's lack of any information in this respect. If it should succeed in doing so, the court will be obliged not to order disclosure and its denial of defendant's motion to disclose the identity and the conviction shall stand. If the People do not choose to request such hearing, or if the informant's lack of exculpatory information is not established an order for disclosure will be required."

As in *Blouin,* the trial court here found defendant had made no prima facie showing for disclosure thus the reason for an *in camera* hearing never arose in the trial court. Surely, the People have no reason to request such a hearing when they, as well as the court, believe that defendant has failed to demonstrate that there is a "reasonable possibility" that the informant could give evidence on the issue of his guilt which might result in his exoneration, and the court denies his motion. When the issue is resolved in favor of the People there is no necessity for an *in camera* hearing, and such a hearing could only be a waste of court time. Thus, under the circumstances here, we cannot say the People waived their right to request an *in camera* hearing by failing to make it in the trial court, and deem the Attorney General's request for an *in camera* hearing to be timely because the need therefor did not arise until this court ruled that a prima facie case for disclosure had been shown. To remand the cause for an *in camera* hearing will prevent that duplication of judicial time and effort at both the trial and appellate level condemned in *Williams.* Were we to reverse the judgment, and the prosecution proceeds to retry the cause, if, in the process of pretrial the *in camera* hearing shows that the informant's testimony is not exculpatory, a retrial, of course, will be necessary.

The remand power under section 1260, Penal Code, has been liberally exercised (*People* v. *Vanbuskirk,* 61 Cal.App.3d 395, 405 [132 Cal.Rptr. 30] [remand for the sole purpose of taking evidence on fairness of photographic lineup] in cases in which, as here, the validity of a conviction depended solely on an unresolved or improperly resolved factual issue distinct from the issues submitted to the trier of fact on trial on the merits, and the issue could be determined at a separate postjudgment hearing (*People* v. *Anderson,* 59 Cal.App.3d 831, 843 [131 Cal.Rptr. 104] [remand for sole purpose of determining propriety of prosecution's destruction of evidence]; *People* v. *Terry,* 38 Cal.App.3d 432, 442-443 [113 Cal.Rptr. 233] [remand for sole purpose of hearing on voluntariness of confession]; *People* v. *Simpson,* 30 Cal.App.3d 177, 186 [106 Cal.Rptr. 254] [remand for sole purpose of determining issue of prejudice re claim of denial of speedy trial]; *People* v. *MacDonald,* 27 Cal.App.3d 508, 511-512 [103 Cal.Rptr. 726] [remand for sole purpose of resolving speedy trial issue]; *In re Wells,* 20 Cal.App.3d 640, 651 [98 Cal.Rptr. 1] [remand for sole purpose of determining whether challenge to composition of grand jury was valid]). Under the authority of section 1260, Penal Code, we remand the cause for the purpose of holding an *in camera* hearing.

The cause is remanded to the superior court with directions to vacate its order denying defendant's motion to disclose identity of informant, and hold an *in camera* hearing in accordance with the procedure set forth in section 1042, subdivision (d), Evidence Code, and if, as a result of such *in camera* hearing, it concludes that there is no reasonable possibility that nondisclosure might deprive defendant of a fair trial, to deny the motion and leave in effect the judgment of conviction, or if it concludes there is a reasonable possibility that nondisclosure might deprive defendant of a fair trial, to order disclosure or upon refusal of the People to comply, a dismissal of the case, and in the event the prosecution discloses the identity of the informant, to vacate the judgment for retrial on the merits.

Thompson, J., concurred.

**HANSON, J.**—I respectfully dissent.

I conclude that defendant Ingram's contentions on appeal that the trial court committed error in denying his motion to disclose the identity of

the informant and that the evidence was insufficient to sustain the conviction are without merit. I would affirm the judgment of conviction.[1]

In the case at bench defendant Ingram was charged and convicted of possession of heroin, not sale of heroin.

" ' "Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion or control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic." (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359].)' (*People* v. *Showers,* 68 Cal.2d 639, 642-643 [68 Cal.Rptr. 459, 440 P.2d 939]; *People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Gorg,* 45 Cal.2d 776, 780 [291 P.2d 469].) 'These elements may be established by circumstantial evidence and any reasonable inferences to be drawn therefrom. (*People* v. *Groom, supra* [60 Cal.2d 694] at pp. 696-697; *People* v. *Villanueva, supra* [220 Cal.App.2d 443] at p. 450.) . . . Constructive possession is sufficient and possession by any person when the defendant has an immediate right to exercise dominion and control over the narcotic will support a conviction. (*People* v. *Toms,* 163 Cal.App.2d 123, 128 [329 P.2d 90].)' [Citation.]" (*People* v. *White* (1970) 11 Cal.App.3d 390, 394-395 [89 Cal.Rptr. 761].)

"Exclusive possession of the premises is not required, nor is physical possession of the narcotic. [Citations.] Although proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession [citation], possession may be imputed where the contraband is found in a location which is subject to joint dominion and control of the accused and another. [Citations.]" (*People* v. *Kanos* (1971) 14 Cal.App.3d 642, 652 [92 Cal.Rptr. 614].)

[1]This case is apparently moot for all practical purposes except for the standing conviction.

Pursuant to California Rules of Court, rule 12(a), I ordered up the original superior court file including probation reports.

The record reflects that on November 22, 1976, at time of sentencing of defendant Ingram in the instant case proceedings were suspended and he was granted formal probation for a period of 5 years with terms and conditions including that he spend the first 365 days in local custody. He was given credit for 180 days spent in custody and allowed to spend the balance of 185 days as an in-patient in the House of Uhuru residential program.

His probation report shows that he was 29 years old at the time and had "several youth authority commitments and a state prison commitment for sale of heroin."

Defendant Ingram violated probation in the instant case, having been arrested on March 11, 1977, and March 20, 1977, for being under the influence of a controlled substance in violation of Health and Safety Code section 11550. His probation was revoked on May 31, 1977, and he was sentenced to 365 days in the county jail less credit for time spent in the House of Uhuru residential program and time spent in custody and probation was terminated.

Here, the informant merely pointed the finger at codefendant Evans and the apartment from which the contraband was recovered, did not participate in the criminal act with which defendant was later charged (possession of heroin), and therefore was not a material witness on the issue of guilt. (See *People* v. *Shipstead* (1971) 19 Cal.App.3d 58, 74 [96 Cal.Rptr. 513]; *People* v. *Rupar* (1966) 244 Cal.App.2d 292, 300 [53 Cal.Rptr. 70]; *People* v. *Ortiz* (1962) 208 Cal.App.2d 572, 580 [25 Cal.Rptr. 431].) The informant was only used as a lead to information upon which an independent investigation was commenced that independently led to and verified the presence of the heroin and his·identity need not be disclosed. (See *People* v. *Martin* (1969) 2 Cal.App.3d 121, 128 [82 Cal.Rptr. 414]; *People* v. *Williams* (1967) 255 Cal.App.2d 653, 661 [63 Cal.Rptr. 501].)

In my view the trial court properly concluded that there was no reasonable possibility that the informant could give evidence on any of the three requisite elements necessary to establish proof of unlawful possession of narcotics as listed in *People* v. *White, supra,* 11 Cal.App.3d 390. I fail to see the reasonable evidenciary significance of whether or not defendant Ingram was the other black man present in the apartment the previous day or evening before the search when his codefendant Evans sold some heroin to the informant. If defendant Ingram was present, it would add strength to the prosecution's case. If the black man was a person other than defendant Ingram, it could have been another customer or friend of codefendant Evans and adds nothing of value as to any of the requisite elements required to establish proof of possession of the heroin at the time of the search and arrest on May 12, 1976.

In *People* v. *Lamb* (1972) 24 Cal.App.3d 378 [101 Cal.Rptr. 25], an informant had told police of narcotics sales taking place at a particular residence. The informant described one of the alleged sellers as a "Welo" Lamb. The defendant's name was Leonard Lamb. The defendant contended that, had the informant been available for interrogation, it might have developed that the sales were by someone other than the defendant. (*Id.,* at pp. 381-382.) The court noted that "[t]he most that the informer could have done for defendant would have been to cast doubt on the defendant's status as a seller. . . ." (*Id.,* at p. 382.) The court reduced the judgment to possession of a controlled substance and affirmed it as so modified. (*Id.,* at pp. 382-383.)

I further conclude the totality of the evidence, direct and indirect, is overwhelming that defendant Ingram had more than the opportunity of access to the narcotics found in the apartment and in fact exercised joint

dominion and control over the heroin with codefendant Evans, had knowledge of its presence and narcotic nature and, therefore, was in possession of the narcotic. (*People* v. *Kanos, supra,* 14 Cal.App.3d 642.) He was present in the apartment when the officers arrived to investigate. Codefendant Evans, who was in a nightgown, admitted that he lived in the apartment and stated he shared it with defendant Ingram. Defendant Ingram's statements to the officers "Why did you come to *our* place?" and "*We* are moving pretty soon" (italics added), coupled with the fact that he was in his underwear when the police arrived and the testimony of witnesses Dinatale and Dobbin, resident security guards at the apartment, that both defendants lived in apartment 107, all constitute substantial evidence that defendant Ingram shared the apartment with codefendant Evans and that they both exercised joint dominion and control over the entire premises and the contents therein, including the seized contraband, some of which was in plain view in the kitchen sink.

Furthermore, in my view, the defense testimony that defendant Ingram kept clothes at his father's house and stayed only part time in the apartment where the contraband was found and where he also kept clothes, if true, does not exonerate him from the offense of which he was charged and convicted. Here, the sharing of the apartment timewise and spacewise under the totality of the evidence was sufficient to constitute if not actual possession at least "constructive possession" which is sufficient. (*People* v. *White, supra,* 11 Cal.App.3d 390.)

Officer Kington's testimony that both defendants had track marks on their arms coupled with defendant Ingram's admission that he had used narcotics in the past, the track marks on his arms at the time of his arrest and his past convictions of sale of narcotics constitute substantial evidence that he had knowledge of the narcotic character of the material. (See *People* v. *Ford* (1975) 54 Cal.App.3d 149, 156 [126 Cal.Rptr. 396].) The "mere possession of a narcotic constitutes substantial evidence that the possessor of the narcotic knew of its nature. [Citation.]" (*People* v. *Gordon* (1970) 10 Cal.App.3d 454, 460 [89 Cal.Rptr. 214]; *People* v. *White, supra,* 11 Cal.App.3d 390, 396.)

Finally, suffice it to say that in my view the reliance of defendant Ingram and the majority opinion on *People* v. *Coleman* (1977) 72 Cal.App.3d 287 [139 Cal.Rptr. 908], which emanated from this court (to which I dissented) is clearly distinguishable and not dispositive of the case at bench.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1979.