[Crim. No. 34458. Second Dist., Div. Three. Jan. 22, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES ALLEN, Defendant and Appellant.

COUNSEL

Susan L. Wolk, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**POTTER, J.**—Defendant Charles Allen appeals from a conviction, after a nonjury trial, of violation of Health and Safety Code section

11351, subdivision (a) (possession of heroin for purposes of sale). This is his second appeal therefrom. On the first appeal, defendant contended that the trial court had erroneously denied his pretrial motion to require the disclosure of the identity of informants.

■ In a nonpublished opinion, this division held that the evidence at the hearing demonstrated a reasonable possibility that one informant "could give evidence on the issue of guilt which might result in defendant's exoneration." This informant reported that he was in a bar (where defendant was arrested allegedly in possession of heroin) within five minutes of such arrest. Defendant articulated two theories of defense which a witness percipient to events immediately preceding his arrest might support. The prosecution had opposed the motion on the ground that the facts shown gave rise to no more than "mere 'speculation' that the informant could produce evidence favorable to the defense." We reversed, pointing out the lack of merit of the People's position, in light of the decision of the Third District in *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412 [112 Cal.Rptr. 485], from which we quoted the following passage (*id.*, at pp. 423-424): "As previously stated, the evidentiary showing required by those decisions is not as to the exculpatory nature of the informer's potential testimony but merely as to the quality of the vantage point from which the informer viewed either the commission or the immediate antecedents of the alleged crime. The noted Supreme Court cases ask in effect, 'What was the informer *in a position* to perceive?' If the evidence shows that the informer had a sufficiently proximate vantage point, those Supreme Court decisions simply speculate concerning the informer's potential testimony and hold that the defendant has demonstrated a reasonable possibility that the informant could give evidence which might result in the defendant's exoneration. Speculation as to such an informer's testimony is consistent with cases which discern a constitutional right in the accused to seek out the informer to inquire what he knows. (See *People* v. *Garcia, supra,* 67 Cal.2d at p. 840 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Kiihoa, supra,* 53 Cal.2d at p. 752 [25 Cal.Rptr. 813]; *People* v. *Castiel, supra,* 153 Cal.App.2d at p. 657 [315 P.2d 79].)"

We also pointed out that this holding was mandated by the decision of our Supreme Court in *People* v. *Hunt* (1971) 4 Cal.3d 231, 240 [93 Cal.Rptr. 197, 481 P.2d 205], where the court said: "[I]n *Garcia* [67 Cal.2d 830] we could only speculate that he had such information." *Garcia* nonetheless held that disclosure was required. Under

these authorities, our conclusion was foregone since it was obvious that the informant was in a position to perceive "either the commission or the immediate antecedents of the alleged crime." (38 Cal.App.3d at p. 423.) This was the basis for our holding that "[i]t is thus apparent that defendant has established a prima facie case for disclosure."

We decided, however, not to order disclosure without giving the People the opportunity to produce the informant at an *in camera* hearing pursuant to Evidence Code section 1042, subdivision (d), as requested during oral argument. We indicated that though the "preferable procedure when such a prima facie showing is made is for the court to so indicate and thus give the prosecution the opportunity to request such an *in camera* hearing," where the court ruled otherwise, we deemed the request timely made when that ruling was reversed. On the assumption that the informant would be available for an *in camera* hearing and might through *in camera* examination establish lack of prejudice from the denial of disclosure, we chose to remand in the hope of avoiding waste of judicial effort entailed in a retrial. (See *People v. Ingram* (1978) 87 Cal.App.3d 832, 842 [151 Cal.Rptr. 239].) ■ In so doing, we stated the conditions under which affirmance was possible, as follows: "If the informant is produced and the hearing discloses that there is indeed no reasonable possibility that nondisclosure might deprive defendant of a fair trial, there is no reason that the judgment cannot be affirmed."

Accordingly, our remittitur specified that "[i]f, as a result of such *in camera* examination the trial court finds that there is no reasonable possibility that nondisclosure might deprive the defendant of a fair trial, [it] shall deny the motion and leave the judgment [of conviction] in effect...."

Upon remand, the trial court attempted to hold such an *in camera* examination. It was, however, found to be impossible to do so inasmuch as the informant had died 12 days after the original hearing of the motion, as the result of multiple gunshot wounds. Thus, though the identity of the informant was disclosed, defendant was denied any opportunity to utilize his testimony or his knowledge in defense of the charge.

The testimony at the hearing also established that the trial which resulted in the judgment of conviction did not occur until approximately 11 months after the death of the informant.

At the conclusion of the hearing, the court found "that the People have complied with all orders given them" and left the judgment of conviction in effect. This appeal followed.

### Contentions

 Defendant contends that he is entitled to a dismissal because circumstances beyond his control have denied him the opportunity to prepare a defense. The People contend that since the death-caused unavailability of the informant was not due to any improper conduct or omission on the part of the prosecution, a dismissal is not in order.

### Discussion

*Summary*

It is the law of this case that defendant "established a prima facie case for disclosure" and that the speculative nature of the content of the informant's perception "did not deprive defendant of the right to at least have such content ascertained by an *in camera* examination of the informant...." That right has been lost without any fault on defendant's part as a result of the People's insistence upon an erroneous position in the trial court. The consequences of that decision must therefore fall on the People, not the defendant, and the case must be dismissed.

*The Holdings of This Court on the*
*Former Appeal Are Law of the Case*

 The opinion of this division on the former appeal became final February 16, 1979, when the remittitur issued. The matters determined therein are therefore law of the case. (*Allen* v. *Cal. Mutual B. & L. Assn.* (1943) 22 Cal.2d 474, 481 [139 Cal.Rptr. 321].) Reference to our unpublished opinion is appropriate to establish what matters are therein adjudicated. (Cal. Rules of Court, rule 977.)

The matters which have become law of the case include the following: (1) the evidence heard at the disclosure motion established "a prima facie case for disclosure" of the informant who "'had a sufficiently proximate vantage point' from which he 'viewed...the immediate antecedents of the alleged crime' so that he was in a position to perceive exculpatory circumstances"; (2) the defendant articulated a

theory of defense based on claimed exculpatory circumstances; (3) "[t]he speculative nature of the content of [the informant's] perception did not deprive defendant of the right to at least have such content ascertained by an *in camera* examination of the informant. . . ."; (4) the People's failure to request an *in camera* hearing did not, in light of the trial court's favorable ruling, constitute a waiver thereof; and (5) the judgment could be affirmed "[i]f the informant is produced and the hearing discloses that there is indeed no reasonable possibility that nondisclosure might deprive defendant of a fair trial. . . ."

*As a Result of the Unavailability
of the Informer, It Cannot Now Be
Established That a Fair Trial Was
Possible Without Disclosure*

 The holding in the former appeal that defendant had made a prima facie case for disclosure was a holding that until it was demonstrated otherwise by an *in camera* examination of the informant, defendant was entitled to disclosure or dismissal. Inasmuch as the purpose of the disclosure is to enable the defendant to contact the informant to obtain exculpatory information, the required disclosure must necessarily be at a time when defendant can use that information to defend himself.

The informant was alive when defendant's motion for disclosure was heard. However, when the court attempted to conduct the *in camera* examination, he was unavailable as a result of his intervening death. Consequently, it is impossible at this time to refute defendant's prima facie showing, and we must conclude that defendant was entitled to a disclosure. As Division Five of this district stated in *People* v. *Aguilera* (1976) 61 Cal.App.3d 863, 868-869 [131 Cal.Rptr. 603]: "If his testimony at the *in camera* hearing shows that there is no reasonable possibility the informant could aid the defense, the public interest in nondisclosure of his identity can be preserved without any infringement on the defendant's right to a fair trial." But there is no way to establish the absence of any such reasonable possibility if the informant cannot be so examined. Defendant's prima facie case thus suffices to establish enfringement on his right to a fair trial.

The fact that the informant failed in any event to survive to a time when he might have been a witness at the trial does not alter this situa-

tion. He clearly did survive long enough to have undergone *in camera* examination which, if it produced an order for disclosure (with which the People did not comply) would cause dismissal. Furthermore, if disclosure resulted, contact with the informant could have made available evidence other than his direct testimony. We must, therefore, conclude that defendant's right to a fair trial has been substantially impaired.

*Justice Requires That the Risk*
*of the Informant's Unavailability*
*Be Borne by the People*

■ In the former appeal, we concluded that the People had not waived their right to fall back upon the *in camera* examination to justify nondisclosure by failing to request it in the trial court. In so doing, we relied upon the decision of Division One of this district in *People* v. *Ingram, supra,* 87 Cal.App.3d at pages 840-843. *Ingram* adopted the procedure of remand pursuant to the People's belated request in the interest of preventing "duplication of judicial time and effort" (*id.,* at p. 842); in the event it was concluded after an *in camera* hearing that "there is no reasonable possibility that nondisclosure might deprive defendant of a fair trial" (*id.,* at p. 843), the judgment of conviction could remain in effect. In so doing, the court stated: "[W]e cannot say the People waived their right to request an *in camera* hearing by failing to make it in the trial court. ..." (*Id.,* at p. 842.) Such nonwaiver was supported by the proposition that there was no reason for the People to request such a hearing so long as the court agreed with the People's position that a prima facie showing was lacking. We agree with that logic and affirm it now. Under such circumstances, the People's conduct in failing to request an *in camera* hearing cannot be construed as a voluntary relinquishment of the opportunity to call for *in camera* examination in the event they are proven wrong. But that is not to say that in making such a decision the People do not run any risk that changed circumstances may render their belated request a nullity by rendering impossible accomplishment of the purpose of such an *in camera* examination.

■ The proper assignment of such risk is governed by the decision of this division in *Harris* v. *Superior Court* (1973) 35 Cal.App.3d 24, 27 [110 Cal.Rptr. 400]. In *Harris,* as in the case at bench, there were two appeals. In the first appeal, Division One of this court in an unpublished opinion reversed the judgment of conviction "upon the ground

that the trial court erred in refusing to compel disclosure of the name of an informant who was determined to be a material witness." (*Id.*, at p. 25.) Such determination was based upon Division One's review of the transcript of an *in camera* examination of the informant. The reversal permitted the prosecution to disclose the informer's identity or dismiss. Upon resumption of proceedings, the People disclosed the name of the informer and that his whereabouts were no longer known to the authorities. After a lengthy hearing, the trial court ruled that "the People had shown due diligence with regard to locating [the informer] following reversal of the judgment" (*id.*, at pp. 25-26) and reset the matter for trial.

On defendant's petition for writ of prohibition, this division issued a peremptory writ requiring dismissal. In so doing, we said (*id.*, at p. 27): "It has been established as the law of the instant case (*People* v. *Harris*, 2d Crim. No. 20696) that the informant was a material witness on the question of guilt whose identity should have been disclosed under penalty of dismissal because his testimony might well have permitted the drawing of reasonable inferences pointing to petitioner's innocence. The underlying rationale of this decision and of the cases cited above is that nondisclosure would deprive an accused of a fair trial in violation of due process of law. *Here the original refusal of the People to disclose the name of the informant coupled with circumstances beyond control of petitioner has deprived petitioner of information already determined essential to her having a fair trial.* Under the circumstances no showing short of actual disclosure of the name and whereabouts of the informant can suffice to remedy the situation. If the original trial without this information was unfair, a retrial sans same would be nothing but a replay of a constitutionally defective record. If any party must suffer the consequences of the prosecution's original decision to refuse disclosure of the identity of the informer in this case it must be the People and not the accused. Our conclusion in this respect is compelled by [*People* v. *Goliday* (1973) 8 Cal.3d 771 (106 Cal.Rptr. 113, 505 P.2d 537); *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847 (83 Cal.Rptr. 586, 464 P.2d 42); and *Honore* v. *Superior Court* (1969) 70 Cal.2d 162 (74 Cal.Rptr. 233, 449 P.2d 169)] [Fn. omitted]." (Italics added.) *Harris* cannot be distinguished on the basis that the informant in that case was determined to be a material witness. In the case at bench, a prima facie showing has been made, and such showing cannot be refuted.

In *People* v. *Viramontes* (1978) 85 Cal.App.3d 585, 593 [149 Cal.Rptr. 607], this division said: "Though the People had the opportu-

nity, they did not make such a request. Having failed to avail themselves of the statutory procedure which 'allows the prosecutor to produce the informant *in camera* so that the court can determine just what the informant knows, and whether his testimony would be material on the issue of guilt' (*People* v. *Aguilera, supra,* 61 Cal.App.3d at p. 868), the People cannot now complain that the record in this respect is uncertain." In the case at bench, the People must likewise bear the burden of any such uncertainty.

Nor can *Harris* be distinguished on the basis that the People were found at fault in failing to maintain contact with the informant. The only comment concerning this aspect of the matter is the following (35 Cal.App.3d at p. 26): "It appears to be conceded and we conclude that the court's implied finding of due diligence to locate made by the prosecution following reversal finds ample support in the testimony of the witnesses Sakoda, McKnight and Perkins."

It is clear that the consequences of the nondisclosure were placed upon the People solely by reason of "the prosecution's original decision to refuse disclosure." (*Id.,* at p. 27.)

The rule stated in *Harris* is dispositive of this appeal. We are again required to decide who must suffer the consequences of the prosecution's original election to withhold the informant from *in camera* examination. That election, like the refusal to disclose in *Harris,* was upheld by the trial court but later found to be unsupportable. Changing circumstances "beyond control of" the defendant in both cases made subsequent performance by the People of that which they should have offered in the first place of no utility to the defendant. We must, therefore, place the consequences of the People's erroneous election on the People and dismiss the action.

This result is regrettable, both because defendant has suffered substantial incarceration for an offense of which he has not, by fair trial, been found to have been guilty and because a People's case, which probably was meritorious, must fail. These unfortunate consequences could have been avoided had the prosecutor not urged a contention which clearly was foreclosed by the precedent authorities. It is hoped, at least, that this disposition of the case will bring home to prosecutors the risks inherent in urging such contentions and tend to discourage such conduct in the future.

*Disposition*

The judgment is reversed and the court is directed to enter a judgment dismissing the charges against defendant.

Klein, P. J., and Allport, J., concurred.

A petition for a rehearing was denied February 7, 1980.