Filed 3/12/13  P. v. Petty CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JESSE JAMES PETTY,<br><br>     Defendant and Appellant. | A134686<br><br>(Humboldt County<br>Super. Ct. No. CR1100329) |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JESSE JAMES PETTY,<br><br>     Defendant and Appellant. | A134826<br><br>(Humboldt County<br>Super. Ct. No. CR1101698) |

Pursuant to a negotiated global disposition of these two and other criminal cases, defendant and appellant Jesse Petty pleaded no contest to one felony charge and guilty to three additional felony charges.  Other charges in the two cases were dismissed.  After defendant was sentenced to a total term of 11 years 8 months in accordance with the terms of the agreed-to disposition, he moved to withdraw his no contest and guilty pleas on the grounds he had been confused as to the good-time/work-time credit for time served he could receive, he did not have time to discuss the credit situation with his family, and he felt pressured to accept the negotiated disposition.  The trial court denied his motions.  Defendant contends the court abused its discretion in doing so.  We affirm.

1

## BACKGROUND

On January 17, 2011, defendant was reported brandishing a knife at a passerby in Garberville.[1]  He ran away when approached by several deputy sheriffs, disregarding an order to get on the ground.  As the deputies gave chase, defendant threw objects at them, and when the deputies subdued him with a baton, he hit back.  At one point, one of the deputies saw a knife in defendant's left hand and ordered defendant to drop it, which he did.  Nevertheless, the deputy was stabbed.  Eventually, defendant was subdued, although he threatened the deputy who had been stabbed and also spat on one of the deputies.

On January 20, 2011, the Humboldt County District Attorney filed a criminal complaint alleging four felony counts:  attempted murder of a police officer (Pen. Code, § 664, subd. (e))[2]; assault on an officer (§ 245, subd. (c)); exhibiting a deadly weapon to resist arrest (§ 417.8); and resisting an executive officer (§ 69).  It was further alleged count 2 was a violent felony (§ 667.5, subd. (c)), and count 4 was a serious felony because of defendant's use of a deadly weapon (§§ 1192.7, subd. (c)(23), 12022, subd. (b)(1)).  On March 8, 2011, defendant waived a preliminary hearing, and on March 16, the district attorney filed an information alleging the same four counts..

On April 1, 2011, defense counsel applied for funding to retain an expert psychologist, stating "certain psychiatric issues may exist that may have bearing on the appropriate disposition" of the matter.  The court granted the application and, likewise, ordered jail access for the examination.

On April 19, 2011, defendant made a *Faretta*[3] request to represent himself and a hearing was scheduled for April 21.  On April 21, defense counsel declared a doubt as to defendant's mental competence, and the court ordered an evaluation of defendant and suspended the criminal proceedings pursuant to section 1368.

In the meantime, additional charges had been filed against defendant based on

---

[1]  Because defendant waived preliminary hearings, the recited facts are as stated at the change of plea hearings.

[2]  All further statutory references are to the Penal Code unless otherwise indicated.

[3]  *Faretta v. California* (1975) 422 U.S. 806.

an incident at the Humboldt county jail, where he had been taken because he had been on probation at the time of the January 17 incident. On April 18, 2011, he had caused a commotion in his housing unit by continuously pounding on his cell door. When correctional officers tried to move him to a different location, he refused to comply and spat on one of the officers. On April 22, 2011, the Humboldt District Attorney filed a criminal complaint alleging two felony counts: battery by gassing of a peace officer while confined in a detention facility (§ 243.9, subd. (a)) and resisting an executive officer (§ 69).

On April 26, 2011, the trial court granted defendant's *Faretta* motion, ordered the case set along with his other pending criminal case, and continued the matter pending receipt of the competency evaluation that had been ordered in the other case.

By May 5, the court had been informed defendant had been found competent and ruled he could continue to represent himself in the case involving the April incident. Defendant, however, wanted representation by counsel, and the public defender was appointed. On May 13, 2011, defendant renewed his *Faretta* motions in both cases and made a Code of Civil Procedure section 170.6 challenge to Judge Miles, who was hearing the case that day. On May 20, 2011, the court having received and reviewed the written report, declared defendant mentally competent, and reinstated the criminal proceedings. It also granted defendant's *Faretta* motions and, having done so, denied *Marsden*[4] motions as moot.

On June 30, 2011, the public defender was reappointed in both cases to represent defendant. Two weeks later, defendant made additional *Marsden* motions, which the court heard and denied. On July 22, 2011, defendant waived a preliminary hearing in the second case, and on July 27, the district attorney filed an information realleging the two felony counts.

On August 25, 2011, the court set pretrial and trial dates. A month later, on September 22, 2011, the public defender declared a conflict, new counsel was appointed

---

[4] *People v. Marsden* (1970) 2 Cal.3d 118.

3

and the matter was continued for consideration of a global offer to resolve the case and other pending cases.

On September 29, 2011, the parties advised the court of the terms of a proposed global disposition of the two pending felony cases, several misdemeanor cases and a probation revocation petition. As to the felony case involving the January 17 incident, defendant would plead no contest to count 1 reduced to second degree attempted murder of a police officer (§ 664, subd. (e)) and receive nine years, understanding it to be a strike offense, and plead guilty to count 3, exhibiting a deadly weapon to resist arrest (§ 417.8) and receive one year, and to count 4, resisting an executive officer (§ 69), with the special enhancement allegation withdrawn, and receive eight months. As to the felony case involving the April 18 incident, he would plead guilty to count 1, battery by gassing of a peace officer while confined in a detention facility (§ 243.9, subd. (a)) and receive one year. The misdemeanor cases would be resolved by credit for time served sentences, based on his accrued custody to date, and defendant would admit the probation violation. His total aggregate sentence would be 11 years 8 months. Defendant confirmed that he understood the proposed disposition and had had sufficient time to discuss it with his attorney. The court then stated it needed to advise him about "special credit conditions" and continued the matter, with defendant's consent, to the next day for his change of pleas.

The following day, September 30, 2011, the court duly advised defendant as to the rights he was waiving and admonished him as to the maximum consequences of his pleas. After modifying, pursuant to the parties' stipulation, the attempted murder charge to a section 664, subdivision (a) violation to permit a nine-year (rather than life) sentence, the trial court reiterated, and defendant acknowledged, he would be sentenced to a total of 11 years 8 months. In fact, immediately after the prosecutor's recitation of the terms and the court's modification of the section 664 charge, the court asked defendant if he "understood all of that?" Defendant replied: "If it is 11 years 8 months at 85 percent I do." Whereupon the court reiterated the sentence and explained "because it is a strike offense [it] would start once you get to state prison, and I believe it is 85 percent. I

4

believe you get 15 percent credits. Is that what you understand?" Defendant replied, "Yes, your Honor." The court later reiterated the consequences of pleading to a "strike offense," including that "as a result of that [the attempted murder strike offense], your ability to receive credits, good-time/work-time credits are limited as well. And as noted, the good-time/work-time credits would be limited to 15 percent." The court again asked defendant, "[d]o you understand that?" Defendant answered, "Yes, your Honor." The court then accepted his change of pleas, and found a factual basis for them, in accordance with the terms of the negotiated disposition.

Two weeks later, on October 12, 2011, defendant moved to withdraw his pleas. He claimed he was first told by his attorney that by pleading to "the 664(a)/187" he would do "80% of the sentence imposed by the Court," but "[i]mmediately prior" to his pleas, his attorney told him he had been "mistaken" and defendant "would actually do 85% of the custody time." Defendant acknowledged the trial court had advised him he "would receive only 15% credit" on his sentence, but claimed he did not "fully comprehend the consequences" or the "significant difference" between serving "85% time as opposed to 80% time." He also claimed he "felt pressured" to accept the proposed disposition and did not have time to discuss the consequences with his family. He thus concluded he did not feel he had "fully understood those consequences" and the waivers of his rights had not been "freely and voluntarily given."

On October 27, 2011, the court stated it had received defendant's motion to withdraw his pleas and would order a copy of the September 29 and 30 transcripts. The court heard the motion on November 17, 2011. Defendant submitted on his moving papers. The court stated it had re-read the transcripts, and defendant had been fully advised and "indicated his understanding" that he would earn credit at 85 percent. The court accordingly denied his motion.

On January 5, 2012, the trial court imposed sentence in accordance with the negotiated disposition, sentencing defendant to a total aggregate sentence of 11 years 8 months. Rather than allocating all time served to the misdemeanor files, the sentencing

judge put the credit against the felony sentences and ran short county jail sentences in the misdemeanor cases concurrently.

On February 9, 2012, on the basis of defendant's declaration reiterating his claims made in support of his motion to withdraw his plea, the trial court granted defendant's request for a certificate of probable cause. Defendant filed a notice of appeal on February 14, 2012.

## DISCUSSION

On appeal, defendant raises one issue—that the trial court abused its discretion in denying his motion to withdraw his pleas.

Section 1018 provides that at any time before judgment, the trial court may, "for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." Nevertheless, " 'pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' " (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146.) A defendant who seeks to withdraw a plea has the "burden to produce evidence of good cause by clear and convincing evidence." (*People v. Wharton* (1991) 53 Cal.3d 522, 585.) In order to show good cause a defendant must demonstrate, "[m]istake, ignorance or any other factor overcoming the exercise of free judgment." (*People v. Cruz* (1974) 12 Cal.3d 562, 566; see also *People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1617.) In addition, where a defendant's plea is induced by misrepresentations of a fundamental nature, a judgment based upon the plea must be reversed. (*People v. Coleman* (1977) 72 Cal.App.3d 287, 292.) A plea may not be withdrawn, however, " 'simply because the defendant has changed his mind.' [Citations.]" (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.)

Appellate review of a trial court's ruling on a motion to withdraw a guilty plea is similarly narrow. A "claim of an erroneous denial of a motion to withdraw a plea is reviewed for abuse of discretion." (*People v. Holmes* (2004) 32 Cal.4th 432, 442–443.)

Defendant maintains his change of pleas were not knowingly and intelligently made because his counsel allegedly incorrectly informed him, the day before his change

6

of pleas, that he would earn credit at 20 percent, rather than 15 percent. He admits, however, his counsel correctly advised him the following day before he entered his change of pleas. He also claims he was "pressured" to agree to the negotiated disposition and did not have time to talk about it with his family.

We agree with the trial court, which reviewed the September 29 and 30 reporter's transcripts pertaining to defendant's change of pleas, that defendant failed to show by clear and convincing evidence that his will was overcome and his pleas were not knowingly and voluntarily made. The transcript of the September 30 hearing, in particular, makes it abundantly clear defendant was fully aware his plea to the strike offense (already modified pursuant to the prosecutor's stipulation to a non-life crime) meant he would serve 85 percent of the time. The trial court expressly explained the limitation on credits twice, and defendant did not exhibit any confusion on this point. On the contrary, he three times expressly stated that he understood he would serve 85 percent of the time. At no time during the change of plea hearing did defendant exhibit any hesitation about going forward with the negotiated disposition. He also expressly confirmed to the court that no one had promised him anything other than what had been stated in open court to induce him to enter a change of plea and that he was entering the pleas freely and voluntarily.

While there had been a question as to defendant's mental competence at the early stage of the criminal proceedings, that had long since been resolved. Similarly, the trial court's later observation at the sentencing hearing that defendant might have mental health issues he needed to address, was not a commentary on defendant's competency, but on a health issue for which he should obtain "assistance" during his incarceration. Defendant also did not make the faintest suggestion at the change of plea hearing months earlier that any "mental health" issue affected his ability to make a knowing and voluntary plea.

For good reason, there must be clear and convincing evidence that a defendant's will was overborne and he did not knowingly and freely enter a plea to provide a basis to

7

subsequently withdraw it.  The record contains no such evidence here, and the trial court did not abuse its discretion in denying defendant's motion to withdraw his pleas.

**DISPOSITION**

The judgment is affirmed.

_____
Banke, J.


We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.

8